RECEIVED

APR 1 2 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DOCKETED

APR 1 3 2004

| | |
|---|---|
| DIANE BOND, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| CHICAGO POLICE OFFICERS EDWIN | ) |
| UTRERAS (Star No. 19901), ANDREW | ) |
| SCHOEFF (Star No. 4436), CHRIST | ) |
| SAVICKAS (Star No. 5991), ROBERT | ) |
| STEGMILLER (Star No. 18764), JOSEPH | ) |
| SEINITZ (Star No. 4947), ROBERT | ) |
| SCHULTZ (Star No. 13882), NICHOLAS | ) |
| CORTESI (Star No. 15112), JOHN CANNON | ) |
| (Star No. 12241), ROBERT FRANKS (Star | ) |
| No. 15935), WAYNE NOVY (Star No. 2733), | ) |
| and JOHN DOES ONE through FIVE, in their | ) |
| individual capacities; and the CITY OF | ) |
| CHICAGO, | ) |
| | ) |
| Defendants. | ) |

No. **04C 2617**

**JURY TRIAL DEMANDED**

MAGISTRATE JUDGE ASHMAN

**FILED**

APR 2 9 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT

Plaintiff DIANE BOND, by counsel, for her complaint against defendants CHICAGO

POLICE OFFICER EDWIN UTRERAS (Star No. 19901), CHICAGO POLICE OFFICER

ANDREW SCHOEFF (Star No. 4436), CHICAGO POLICE OFFICER CHRIST SAVICKAS (Star

No. 5991), CHICAGO POLICE OFFICER ROBERT STEGMILLER (Star No. 18764), CHICAGO

POLICE OFFICER JOSEPH SEINITZ (Star No. 4947), CHICAGO POLICE OFFICER ROBERT

SCHULTZ (Star No. 13882), CHICAGO POLICE OFFICER NICHOLAS CORTESI (Star No.

15112), CHICAGO POLICE OFFICER JOHN CANNON (Star No. 12241), CHICAGO POLICE

1

OFFICER ROBERT FRANKS (Star No. 15935), CHICAGO POLICE OFFICER WAYNE NOVY (Star No. 2733), CHICAGO POLICE OFFICERS JOHN DOE ONE through FIVE, all in their individual capacities,[1] and THE CITY OF CHICAGO, alleges as follows:

## INTRODUCTION

1. This is a civil rights action for damages and injunctive relief brought pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, 28 U.S.C. § 2201 et seq., the Illinois Hate Crimes Act, and Illinois common law for the torts of assault and battery, false arrest and imprisonment, and intentional infliction of emotional distress.

2. Plaintiff Diane Bond, a forty-nine-year-old African-American woman, sues the Individual Defendants for their ongoing physical, sexual, and psychological abuse and intimidation of Ms. Bond in and around her own home, perpetrated under their color of authority as Chicago Police Officers, and motivated by Defendants' gender and racial anima against Ms. Bond. Defendants have preyed upon Ms. Bond for nearly a year, causing her to live in a state of fear.

## JURISDICTION AND VENUE

3. The jurisdiction of the Court is conferred by 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction is conferred by 28 U.S.C. § 1367.

4. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391, because all defendants reside in the district.

---

1 Hereafter, Defendants Utreras, Schoeff, Savickas, Stegmiller, Seinitz, Schultz, Cortesi, Cannon, Franks, Novy, and John Does One through Five shall collectively be referred to as the "Individual Defendants."

## PARTIES

5.     Plaintiff Diane Bond is a forty-nine-year-old African-American woman, a resident of Cook County, Illinois, and a United States citizen.

6.     Defendants Edwin Utreras, Andrew Schoeff, Christ Savickas, Robert Stegmiller, Joseph Seinitz, Robert Schultz, Nicholas Cortesi, John Cannon, Robert Franks, and Wayne Novy are sworn officers of the Chicago Police Department who are sued in their individual capacities for actions they took by virtue of their authority as police officers.

7.     Defendant Edwin Utreras, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

8.     Defendant Andrew Schoeff, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

9.     Defendant Christ Savickas, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

10.     Defendant Robert Stegmiller, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

11.     Defendant Joseph Seinitz, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

3

12.     Defendant Robert Schultz at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

13.     Defendant Nicholas Cortesi at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

14.     Defendant John Cannon at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

15.     Defendant Robert Franks at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

16.     Defendant Wayne Novy at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

17.     Defendant Chicago Police Officers John Does One through Five are sworn male, Caucasian officers of the Chicago Police Department whose names and star numbers are not now known to Plaintiff. These defendants are sued in their individual capacities for actions they took by virtue of their authority as Chicago Police Officers. At all times material to this Complaint, these defendants acted under color of state law as police officers of the City of Chicago and within the scope of their employment.

4

18.     Defendant City of Chicago is an Illinois municipal corporation, and was, at all times material to this Complaint, the employer and principal of Defendants Utreras, Schoeff, Savickas, Stegmiller, Seinitz, Schultz, Cortesi, Cannon, Franks, Novy, and John Does One through Five.

## FACTS

### April 13, 2003 Incident

19.     At approximately 5:00 p.m. on April 13, 2003, Plaintiff Diane Bond walked up the stairs of her Stateway Gardens apartment building, located at 3651 South Federal in Chicago, Illinois.

20.     As she approached her home, Ms. Bond encountered four or more of the Individual Defendants.

21.     One of the Individual Defendants, without any provocation or lawful justification, pressed his gun against Ms. Bond's temple and demanded to know where she lived. With his gun pressed against Ms. Bond's head, he tore her house keys from her hand, opened the door to her home, and forced Ms. Bond inside the apartment.

22.     After the Defendant opened the door to Ms. Bond's home, three or more additional Individual Defendants entered Ms. Bond's apartment.

23.     The Individual Defendants imprisoned Ms. Bond in her own home, handcuffing her behind her back, while they searched her home.

24.     The Individual Defendants threw Ms. Bond's personal belongings throughout the apartment and damaged her personal property. Among other things, they broke her drinking glasses and certain objects that held religious meaning to Ms. Bond.

5

25.     Ms. Bond's then teen-age son and his friend were also present inside her home. Ms. Bond was forced to watch in handcuffs as two of the Individual Defendants entered her son's bedroom, handcuffed her son and his friend locking their hands behind their backs, and beat them.

26.     In response to Ms. Bond's verbal protest of Defendants' search of her home and beating of her son, one of the Individual Defendants yelled, "Shut up, Cunt!" as he struck her in the face and kicked her in the side.

27.     He then knocked down a painting of a brown-skinned Jesus Christ that was hanging above Ms. Bond's head.  When she asked him to pick up her picture of Christ, he cursed, "Fuck Jesus and you too, Bitch," mocking her deeply held religious beliefs.

28.     Another Individual Defendant forced Ms. Bond up, as she sat crying on the floor. He took Ms. Bond inside her bedroom, closed the bedroom door, removed his police vest from his body, and laid the vest down near Ms. Bond's bed.  He then removed Ms. Bond's handcuffs, and threatened to plant drugs on her and to falsely charge her with a crime if she did not do what he demanded.

29.     A third Individual Defendant entered Ms. Bond's bedroom, seized her by her arm, and ordered her to accompany him inside her closet-sized bathroom.  He closed the door to the bathroom and stood within a foot or two of her body.  The Defendant ordered Ms. Bond to unfasten her bra and shake it out.  He commanded that she open her pants and pull them down.  He then ordered that she place her full hand inside the front of her panties.  The Defendant then forced her to push the front of her panties away from her body and toward him, exposing the most private areas of her body, as he stared and smirked.  He then compelled Ms. Bond to bring her panties back in contact with her pubic area, keeping her hand inside the front side of her underwear near her vagina.  He ordered Ms. Bond

6

to do it again. And again. And again. The Individual Defendant threatened to incarcerate Ms. Bond, if she did not submit to his commands.

30.     In the hope to end her abuse, Ms. Bond held out her hands in front of her body so that the Defendant could handcuff her again and take her to jail. Instead, he opened the door to the bathroom and ordered Ms Bond to sit on the floor, while another Individual Defendant repeatedly beat a middle-aged African-American man, whom Defendants had brought inside Ms. Bond's home without her permission or consent. The Defendant punched him again in the face causing him to fall into Ms. Bond's framed painting of the Last Supper and breaking the glass inside the frame.

31.     The Individual Defendants compelled Ms. Bond to sit on the floor and watch, while they forced her son to perform a sadistic, racist, and demeaning show for the Officers, at the threat of incarceration. They uncuffed Ms. Bond's son and his friend and ordered them to punch and beat up the middle-aged African-American man whom Defendants brought uninvited inside Ms. Bond's home. The Individual Defendants laughed as they demeaned Ms. Bond and her son.

32.     The Individual Defendants left Ms. Bond's home laughing, after they had degraded Ms. Bond and her son.

33.     At no time on April 13, 2003, did Ms. Bond give her permission or consent to any of the Individual Defendants to enter or search her home.

34.     At no time did Ms. Bond provide the Individual Defendants with probable cause or any legal justification to search or seize her person, her home, or her personal belongings.

35.     The Individual Defendants did not possess any search warrant to search Ms. Bond's home nor an arrest warrant to arrest anyone in Ms. Bond's household.

7

36.     The Individual Defendants' physical and mental abuse and humiliating search of Ms. Bond were excessive, unreasonable, and unsupported by any legal justification.

37.     On April 14, 2003, Ms. Bond reported the Individual Defendants' abuse of their police powers to the City of Chicago's Office of Professional Standards.

### April 28, 2003

38.     At approximately 7:30 p.m., on April 28, 2003, two of the Individual Defendants seized Ms. Bond in the stairway leading to her apartment, without any probable cause or other lawful justification.

39.     They dragged her up the stairs by her coat.

40.     The Defendants shouted and cursed at Ms. Bond, "Give me your fucking keys!" As one of the Individual Defendants held Ms. Bond by her coat, the other demanded Ms. Bond's house keys and struck Ms. Bond in her face, causing her to urinate on herself out of fear.

41.     Defendants seized Ms. Bond's keys from her person against her will and used the keys to unlock the front door to her home.

42.     Five or more of the Individual Defendants entered Ms. Bond's home without her permission or consent.

43.     The Defendants also seized two young African-American men and brought them inside Ms. Bond's home without her permission or consent.

44.     Members of the Individual Defendants searched through Ms. Bond's home and possessions.  When Ms. Bond begged them not to destroy certain items of religious significance, one of the Individual Defendants intentionally knocked Ms. Bond's icon of the Virgin Mary to the floor, broke the statue, and mocked Ms. Bond and her beliefs.  "Fuck the Virgin Mary," he said.

8

45.     Three of the Individual Defendants, all white male Chicago Police Officers, demanded that Ms. Bond join them inside her bedroom. They ordered her to undress.

46.     One of the Individual Defendants thrust a pair of needle-nose pliers in Ms. Bond's face and threatened to pull out her teeth, unless she removed her clothes in the presence of the three white male officers. The Defendants forced Ms. Bond to pull down her pants and underwear, exposing her genitalia to the male Defendants. The Individual Defendants further commanded that Ms. Bond reach inside her vagina as she stood before them.

47.     The Individual Defendants threatened to plant drugs on her and incarcerate her, and otherwise verbally abused, intimidated, and humiliated her.

48.     At no time on April 28, 2003 did Ms. Bond give her permission or consent to any of the Individual Defendants to enter or search her home or to search her body.

49.     The Individual Defendants did not possess any search warrant to search Ms. Bond's home nor an arrest warrant to arrest anyone in Ms. Bond's household.

50.     At no time did Ms. Bond provide the Individual Defendants with probable cause or any legal justification to search or seize her person, her home, or her personal belongings.

51.     The Individual Defendants' physical abuse and humiliating search of Ms. Bond were excessive, unreasonable, and unsupported by any legal justification.

52.     Ms. Bond filed a second official misconduct complaint with the City of Chicago's Office of Professional Standards against the Individual Defendants for their abuse on April 28, 2003.

### April 30, 2003

53.     On April 30, 2003, at around 11:30 p.m., two of the Individual Defendants confronted Ms. Bond in the lobby of her apartment building at 3651 South Federal in Chicago.

9

54. One of the Defendants seized Ms. Bond by her arm, and demanded the keys to her home.

55. As Ms. Bond stood in fear of another assault, the Defendant grabbed Ms. Bond around her throat, pushed her up against the elevator door to her apartment building, and threatened, "I'll beat your motherfucking ass."

56. Ms. Bond cried for help, as the Defendant choked and cursed her.

57. Despite Ms. Bond's pleas, the second Individual Defendant stood by and kept a look out for his partner, while he choked Ms. Bond. He facilitated and assisted Defendant's choking of Ms. Bond, and refused to intercede despite a reasonable opportunity to do so. When a private citizen pleaded with him to aid Ms. Bond, the second Individual Defendant thumped his hand against the man's chest and refused to intervene.

58. Other residents from the building responded to Ms. Bond's cries for help.

59. Due to their intervention, the Defendants ultimately released Ms. Bond's throat and told her to "get the fuck out of here."

60. At no time did Ms. Bond provide the Individual Defendants with probable cause or any legal justification to seize her person.

61. The Individual Defendants' seizure and physical abuse of Ms. Bond were unreasonable, excessive, and unsupported by any legal justification.

### March 29 and 30, 2004

62. At approximately 11:40 p.m., on March 29, 2004, Ms. Bond was walking down the stairs of her apartment building at 3651 South Federal.

10

63. The same Defendant who had choked Ms. Bond in April 2003 confronted her in the stairwell with a screwdriver in his hand, along with another Individual Defendant. The Defendant who had choked Ms. Bond ordered her to come to him and threatened to stick her in the neck with the screwdriver.

64. The two Individual Defendants seized Ms. Bond and wrestled her to the ground. They pulled and twisted Ms. Bond's arm behind her back, causing her extreme pain, and forced handcuffs around her wrists. Ms. Bond screamed and cried for help, in fear for her life and of further sexual abuse.

65. As Ms. Bond continued to scream for help, the Individual Defendants pulled her off of the ground and removed her handcuffs. One Individual Defendant placed his finger over his lips, and warned her not to say anything about what happened.

66. The next night, March 30, 2003, after 8:00 p.m., the same Individual Defendant who had warned her not to say anything about the incident stood outside Ms. Bond's home.

67. Ms. Bond emerged wearing a sling on her right arm that the Defendant had pulled and twisted the night before. The Defendant called to Ms. Bond and nodded at her arm, "What happened to you?" he mocked in feigned ignorance.

68. At no time did Ms. Bond provide the Individual Defendants with probable cause or any legal justification to seize her person.

69. The Individual Defendants' seizure and physical abuse of Ms. Bond were unreasonable, excessive, and unsupported by any legal justification.

11

## ALLEGATIONS OF INTENTIONAL CONDUCT AND CAUSATION

70.     Each of the Individual Defendants acted or failed to act knowingly and intentionally, maliciously, wantonly or with reckless or callous disregard of, or indifference to, the rights of Ms. Bond.

71.     The Individual Defendants' seizures of Ms. Bond, the searches of her body, home, and belongings, physical beatings, physical abuse, choking, assaults, intimidation, and humiliation of Ms. Bond, destruction of her property, and vilification of Ms. Bond's religious beliefs and certain icons were undertaken with the intent to discriminate against Ms. Bond's on account of her gender, race, and the color of her skin.

72.     By their actions and omissions, the Individual Defendants violated and abused Ms. Bond's body and home, desecrated her most treasured icons and religious beliefs, violated her Constitutional rights, and robbed Ms. Bond of any feeling of security, leaving Ms. Bond traumatized and violated, in a constant state of fear in and around her own home.

73.     As a direct and proximate result of the conduct of the Individual Defendants described above, Ms. Bond suffered and continues to suffer mental and emotional distress, including but not limited to extreme fear, anxiety, mental pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to her self esteem, and the loss of the sense of personal safety in and around her home. In addition, Ms. Bond suffered physical pain to her head, neck, face, and eye; she suffered and continues to suffer intense pain in her right arm, which was required to be immobilized in a sling; and she was deprived of personal property inside her home.

12

## CLAIM I: FOURTH AND FOURTEENTH AMENDMENTS
(Illegal Search of Person, Home, and Effects)

74.    Plaintiff realleges and incorporates herein paragraphs 1 through 73 above.

75.    Plaintiff asserts Claim I of this action against Individual Defendants in their individual capacities. Claim I arises under 42 U.S.C. § 1983.

76.    The Individual Defendants' unreasonable and illegal searches of Plaintiff's person, home, and personal possessions, undertaken without a warrant, probable cause, or reasonable suspicion, deprived Plaintiff of her Fourth and Fourteenth Amendment rights to be secure in her person, home, papers, and effects against unreasonable searches and seizures.

77.    The aforementioned actions and omissions in the face of a Constitutional duty to intercede by the Individual Defendants were the direct and proximate cause of Plaintiff's Constitutional violations, physical and emotional injuries, loss of personal freedom, and loss of personal property, as set forth more fully above.

78.    Each of the Individual Defendant's actions and omissions was intentional, willful, and exhibited a conscious disregard or reckless indifference to Plaintiff's rights. The award of punitive damages against each Defendant is necessary to punish him for his misconduct, and to deter similar misconduct.

WHEREFORE, Plaintiff prays that the Court:

(A)    Enter a declaratory judgment that the Individual Defendants violated Plaintiff's right to be secure in her person, home, papers, and effects as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

(B)     Enter an appropriate Protective Order, preliminary injunction and then a permanent injunction enjoining the Individual Defendants from their ongoing physical, sexual, and psychological abuse of Plaintiff;

(C)     Award Plaintiff judgment against each of the Individual Defendants, jointly and severally, for actual compensatory damages in an amount to be determined at trial;

(D)     Award Plaintiff judgment against each of the Individual Defendants, jointly and severally, for appropriate punitive damages in an amount to be determined at trial;

(E)     Award costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

(F)     Grant such other and further relief as this Court deems equitable and just.

### CLAIM II: FOURTH AND FOURTEENTH AMENDMENTS
(Unlawful and Unreasonable Seizure and Detention)

79.     Plaintiff realleges and incorporates herein paragraphs 1 through 73 above.

80.     Plaintiff asserts Claim II of this action against Individual Defendants in their individual capacities. Claim II arises under 42 U.S.C. § 1983.

81.     The Individual Defendants' false arrest of Plaintiff and unlawful and unreasonable seizure of Plaintiff's person and effects without a warrant, probable cause, or reasonable suspicion, deprived Plaintiff of her Fourth and Fourteenth Amendment rights to be secure in her person, home, papers, and effects against unreasonable searches and seizures.

82.     The aforementioned actions and omissions in the face of a Constitutional duty to intercede by the Individual Defendants were the direct and proximate cause of Plaintiff's Constitutional violations, physical and emotional injuries, loss of personal freedom, and loss of personal property, as set forth more fully above.

14

83.     Each of the Defendant's actions and omissions was intentional, willful, and exhibited a conscious disregard or reckless indifference to Plaintiff's rights. The award of punitive damages against each Defendant is necessary to punish each Defendant for his misconduct, and to deter similar misconduct.

WHEREFORE, Plaintiff prays that the Court:

(A)     Enter a declaratory judgment that the Individual Defendants violated Plaintiff's right to be secure in her person, home, papers, and effects against unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

(B)     Enter an appropriate Protective Order, preliminary injunction and then a permanent injunction enjoining the Individual Defendants from their ongoing physical, sexual, and psychological abuse of Plaintiff;

(C)     Award Plaintiff judgment against each of the Individual Defendants, jointly and severally, for actual compensatory damages in an amount to be determined at trial;

(D)     Award Plaintiff judgment against each of the Individual Defendants, jointly and severally, for appropriate punitive damages in an amount to be determined at trial;

(E)     Award costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

(F)     Grant such other and further relief as this Court deems equitable and just.

## CLAIM III: FOURTH AND FOURTEENTH AMENDMENT
### (Excessive Force)

84.     Plaintiff realleges and incorporates herein paragraphs 1 through 73 above.

85.     Plaintiff asserts Claim III of this action against the Individual Defendants in their individual capacity. Claim III arises under 42 U.S.C. § 1983.

86.     The Individual Defendants' physical beating, physical abuse, choking, assault, intimidation, and humiliation of Plaintiff without probable cause deprived Plaintiff of her Fourth and Fourteenth Amendment rights to be free from the use of excessive and unreasonable force.

87.     The aforementioned actions and omissions in the face of a Constitutional duty to intercede by the Individual Defendants were the direct and proximate cause of Plaintiff's Constitutional violations, physical and emotional injuries, destruction of her personal property, and loss of personal freedom, as set forth more fully above.

88.     Each of the Defendant's actions and omissions was intentional, willful, and exhibited a conscious disregard or reckless indifference to Plaintiff's rights. The award of punitive damages against each Defendant is necessary to punish each Defendant for his misconduct, and to deter similar misconduct.

WHEREFORE, Plaintiff prays that the Court:

(A)     Enter a declaratory judgment that the Individual Defendants violated Plaintiff's right to be free from the use of excessive and unreasonable force as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

(B)     Enter an appropriate Protective Order, preliminary injunction and then a permanent injunction enjoining the Individual Defendants from their ongoing physical, sexual, and psychological abuse of Plaintiff;

(C)     Award Plaintiff judgment against each of the Individual Defendants, jointly and severally, for actual compensatory damages in an amount to be determined at trial;

(D)     Award Plaintiff judgment against each of the Individual Defendants, jointly and severally, for appropriate punitive damages in an amount to be determined at trial;

16

(E)     Award costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

(F)     Grant such other and further relief as this Court deems equitable and just.

## CLAIM IV: FOURTEENTH AMENDMENT
### (Equal Protection)

89.     Plaintiff realleges and incorporates herein paragraphs 1 through 73 above.

90.     Plaintiff asserts Claim IV of this action against the Individual Defendants in their individual capacities. Claim IV arises under 42 U.S.C. § 1983.

91.     The actions and omissions of the Individual Defendants, in seizing Plaintiff, searching her body, home, and belongings, physical beating and abusing her, assaulting, intimidating, and humiliating her, were undertaken with the intent to discriminate against Plaintiff on account of Plaintiff's gender, race, and color of her skin, denying Plaintiff of her Fourteenth Amendment right to equal protection under the law.

92.     The Individual Defendants singled Plaintiff out for abuse (as set forth more fully above) and treated her differently from other similarly situated persons. The Individual Defendants' differential treatment of Plaintiff was intentional, malicious, and motivated by ill-will. Their differential treatment was also motivated by their gender and racial anima. In addition, their differential treatment of Plaintiff was arbitrary and irrational.

93.     The aforementioned actions and omissions in the face of a Constitutional duty to intercede by the Individual Defendants were the direct and proximate cause of Plaintiff's Constitutional violations, physical and emotional injuries, loss of personal freedom, and loss of personal property, as set forth more fully above.

94.     Each of the Defendant's actions and omissions was intentional, willful, and exhibited a conscious disregard or reckless indifference to Plaintiff's rights. The award of punitive damages against each Defendant is necessary to punish each Defendant for his misconduct, and to deter similar misconduct.

WHEREFORE, Plaintiff prays that the Court:

(A)     Enter a declaratory judgment that the Individual Defendants violated Plaintiff's right to equal protection under the law as guaranteed by the Fourteenth Amendment to the United States Constitution;

(B)     Enter an appropriate Protective Order, preliminary injunction and then a permanent injunction enjoining the Individual Defendants from their ongoing physical, sexual, and psychological abuse of Plaintiff;

(C)     Award Plaintiff judgment against each of the Individual Defendants, jointly and severally, for actual compensatory damages in an amount to be determined at trial;

(D)     Award Plaintiff judgment against each of the Individual Defendants, jointly and severally, for appropriate punitive damages in an amount to be determined at trial;

(E)     Award costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

(F)     Grant such other and further relief as this Court deems equitable and just.

CLAIM V: ILLINOIS HATE CRIME STATUTE

95.     Plaintiff realleges and incorporates herein paragraphs 1 through 73 above.

96.     Plaintiff asserts Claim V of this complaint, arising under the private right of action included in the Illinois Hate Crimes Statute, 720 ILCS 5/12-7.1, against the Individual Defendants

18

and their employer, the City of Chicago. This Court has jurisdiction of this claim under 28 U.S.C. § 1367.

97.     The Individual Defendants' assault, battery, trespass to her home, and damage to her property, as set forth more fully above, were intentional, willful, wanton, malicious, and motivated, in whole or in part, by the Plaintiff's gender, race, color, and ancestry, in violation of Illinois statute 720 ILCS 5/12-7.1(a).

98.     The aforementioned actions of the Individual Defendants were the direct and proximate cause of Plaintiff's physical and emotional injuries and loss of personal property, as set forth more fully above.

99.     The actions committed by the Individual Defendants were undertaken within the scope of their employment as police officers of the City of Chicago.

WHEREFORE, Plaintiff prays that the Court:

(A)     Award Plaintiff judgment against each of the Individual Defendants and the City of Chicago, jointly and severally, for actual compensatory damages in an amount to be determined at trial;

(B)     Award Plaintiff judgment against each of the Individual Defendants (excluding the City of Chicago), jointly and severally, for appropriate punitive damages in an amount to be determined at trial;

(C)     Award costs, expenses, and reasonable attorneys' fees;

(D)     Grant such other and further relief as this Court deems equitable and just.

CLAIM VI: ILLINOIS BATTERY

100.     Plaintiff realleges and incorporates herein paragraphs 1 through 73 above.

101.    Plaintiff asserts Claim VI of this complaint, arising under Illinois common law, against the Individual Defendants and their employer, the City of Chicago. This Court has jurisdiction of this claim under 28 U.S.C. § 1367.

102.    The Individual Defendants subjected Plaintiff to contact of an insulting and provoking nature and caused Plaintiff bodily harm, directly and proximately causing Plaintiff's physical and emotional injuries, as set forth above. The Individual Defendants thereby subjected Plaintiff to the tort of battery under Illinois law.

103.    The Individual Defendants' actions and omissions, as set forth above, were intentional, willful, wanton, malicious, and without probable cause, provocation, or legal justification, and/or with reckless disregard for their natural consequences.

104.    The actions committed by the Individual Defendants described above were undertaken within the scope of their employment as police officers of the City of Chicago.

WHEREFORE, Plaintiff prays that the Court:

(A)    Award Plaintiff judgment against each of the Individual Defendants and the City of Chicago, jointly and severally, for actual compensatory damages in an amount to be determined at trial;

(B)    Award Plaintiff judgment against each of the Individual Defendants (excluding the City of Chicago), jointly and severally, for appropriate punitive damages in an amount to be determined at trial;

(C)    Award costs, expenses, and reasonable attorneys' fees;

(D)    Grant such other and further relief as this Court deems equitable and just.

20

CLAIM VII: ILLINOIS FALSE ARREST AND IMPRISONMENT

105.    Plaintiff realleges and incorporates herein paragraphs 1 through 73 above.

106.    Plaintiff asserts Claim VII of this complaint, arising under Illinois common law, against the Individual Defendants and their employer, the City of Chicago. This Court has jurisdiction of this claim under 28 U.S.C. § 1367.

107.    The Individual Defendants' seizure and arrest of the Plaintiff without a warrant and without probable cause were intentional, willful, wanton, and unreasonable; they denied Plaintiff her personal liberty against her will; and they constitute the tort of false arrest and imprisonment under Illinois law. Further, these actions directly and proximately caused Plaintiff's injuries as set forth more fully above.

108.    The actions committed by the Individual Defendants described above were undertaken within the scope of their employment as police officers of the City of Chicago.

WHEREFORE, Plaintiff prays that the Court:

(A)    Award Plaintiff judgment against each of the Individual Defendants and the City of Chicago, jointly and severally, for actual compensatory damages in an amount to be determined at trial;

(B)    Award Plaintiff judgment against each of the Individual Defendants (excluding the City of Chicago), jointly and severally, for appropriate punitive damages in an amount to be determined at trial;

(C)    Award costs, expenses, and reasonable attorneys' fees;

(D)    Grant such other and further relief as this Court deems equitable and just.

21

CLAIM VIII: ILLINOIS INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

109.    Plaintiff realleges and incorporates herein paragraphs 1 through 73 above.

110.    Plaintiff asserts Claim VIII of this action, an Illinois common law action for intentional infliction of emotional distress, against the Individual Defendants and their employer, the City of Chicago. This Court has jurisdiction of this claim under 28 U.S.C. § 1367.

111.    The actions committed by the Individual Defendants as described above were extreme and outrageous; they were undertaken willfully, wantonly and maliciously, with the intent to cause Plaintiff severe emotional distress; and they caused and continue to cause Plaintiff severe emotional distress.

112.    The actions committed by the Individual Defendants described above were undertaken within the scope of their employment as police officers of the City of Chicago.

WHEREFORE, Plaintiff prays that the Court:

(A)    Award Plaintiff judgment against each of the Individual Defendants and the City of Chicago, jointly and severally, for actual compensatory damages in an amount to be determined at trial;

(B)    Award Plaintiff judgment against each of the Individual Defendants (excluding the City of Chicago), jointly and severally, for appropriate punitive damages in an amount to be determined at trial;

(C)    Award costs, expenses, and reasonable attorneys' fees;

(D)    Grant such other and further relief as this Court deems equitable and just.

CLAIM IX: ILLINOIS LOCAL GOVERNMENT AND LOCAL GOVERNMENT
EMPLOYEES TORT IMMUNITY ACT
(745 ILCS 10/9-102B)

113.    Plaintiff realleges and incorporates herein paragraphs 1 through 73 above.

114.    Claim IX of this Complaint is an Illinois statutory claim against Defendant City of Chicago.  This Court has jurisdiction of this claim under 28 U.S.C. § 1367.

115.    Defendant City of Chicago is the employer of each of the Individual Defendants.

116.    Each of the Individual Defendants committed the acts and omissions alleged above under color of state law and in the scope of their employment as employees of the City of Chicago.

WHEREFORE, should any of the Individual Defendants be found liable on one or more of the claims set forth above, Plaintiff prays that, pursuant to 745 ILCS 10/9-102B, the Defendant City of Chicago be found liable for any judgment Plaintiff obtains thereon against said defendants, as well as for all attorneys' fees and costs awarded.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL CLAIMS.

Respectfully submitted,

One of Plaintiff's Attorneys

Date: April 12, 2004

Craig B. Futterman
Karen Soares, Senior Law Student*
EDWIN F. MANDEL LEGAL AID CLINIC
University of Chicago Law School
6020 S. University
Chicago, Illinois 60637
(773) 702-9611

*Deborah Pugh, a second year law student at the University of Chicago, assisted in the preparation of this Complaint.

23