IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DIANE BOND,

        Plaintiff,

        v.

CHICAGO POLICE OFFICER EDWIN
UTRERAS, et al.,

        Defendants.

)
)
)
)
)
)
)
)
)
)

F I L E D

JAN - 5 2005   MH

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

No. 04 C 2617

JUDGE LEFKOW

MAGISTRATE JUDGE ASHMAN

DOCKETED
JAN 11 2005

---

**NOTICE OF MOTION**
**and**
**CERTIFICATE OF SERVICE**

TO:    Mr. Arnold Park              Mr. Thomas Platt
       Ms. Sarah Ellis               Ms. Susan Sullivan
       City of Chicago Dept. of Law    City of Chicago Dept. of Law
       30 North LaSalle Street        30 North LaSalle Street
       Suite 900                    Suite 1400
       Chicago, Illinois 60602        Chicago, Illinois 60602

      PLEASE TAKE NOTICE that on January 10, 2005, at 9:30 a.m., or as soon
thereafter as counsel may be heard, the undersigned shall appear before the Honorable
Judge Joan H. Lefkow or any judge sitting in her stead in Room 1925, and then and there
present PLAINTIFF'S MOTION TO COMPEL POLICE PHOTOGRAPHS, a copy of
which is attached hereto. I certify that on this date I caused the same to be served by
hand delivery upon counsel of record.

                                                  _____
                                                  One of Plaintiff's Attorneys

Date: January 5, 2005

Craig B. Futterman
EDWIN F. MANDEL LEGAL AID CLINIC
University of Chicago Law School
6020 S. University Ave.
Chicago, IL 60637
(773) 702-9611

IN THE UNTED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| DIANE BOND, | ) | |
| Plaintiff, | ) | No. 04 C 2617 |
| v. | ) | JUDGE LEFKOW |
| CHICAGO POLICE OFFICERS EDWIN | ) | MAGISTRATE JUDGE ASHMAN |
| UTRERAS (Star No. 19901), ANDREW | ) | |
| SCHOEFF (Star No. 4436), CHRIST | ) | |
| SAVICKAS (Star No. 5991), ROBERT | ) | |
| STEGMILLER (Star No. 18764), JOSEPH | ) | |
| SEINITZ (Star No. 4947), ROBERT | ) | |
| SCHULTZ (Star No. 13882), NICHOLAS | ) | |
| CORTESI (Star No. 15112), JOHN | ) | |
| CANNON (Star No. 12241), and JOHN | ) | |
| DOES ONE through FIVE, in their | ) | |
| individual capacities; and the CITY | ) | |
| OF CHICAGO, | ) | |
| Defendants. | ) | |

**FILED** JAN - 5 2005 MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT

DOCKETED JAN 11 2005

## PLAINTIFF'S MOTION TO COMPEL POLICE PHOTOGRAPHS

Plaintiff, by and through her counsel, respectfully requests, pursuant to Rule 37 of the Federal Rules of Civil Procedure, that this Court order:

a. the Defendant City of Chicago to produce recent color photographs of each and every male white or white Hispanic police officer assigned or detailed to Public Housing Units 715 or 715B, between 4 p.m. and midnight on April 13, 2003, April 19, 2003, April 28, 2003, April 30, 2003, March 29, 2004, and March 30, 2004;

b. the Defendant City of Chicago to produce the photographs of the officers assigned to Unit 715 that were shown to Diane Bond on May 23, 2003;

1



    c. the Defendants produce documents and information concerning the physical descriptions of the Individual Police Defendants; and

    d. each of the Individual Police Defendants to produce a recent color photograph of himself.

Plaintiff respectfully requests that the Court order the defendants to produce the requested photographs under a Protective Order as outlined below. In support, Plaintiff states:

    1. This case challenges a group of Chicago police officers' physical, sexual, racial, and psychological abuse and intimidation of Diane Bond, a fifty-year-old African-American, on at least five occasions between April 2003 and March 2004. The officers did not provide Ms. Bond with their names and badge numbers on any of the occasions when they beat, stripped, searched, threatened, and degraded Ms. Bond and ransacked her home. The photographs are necessary to confirm the identities and roles of the officers. This issue is central to this litigation, as each of the Individual Defendants denies any contact with Ms. Bond.

    2. Plaintiff has agreed to production of the photographs under a protective order that: (1) limits the use of the photos to this case; (2) limits control and possession of the photos to Plaintiff's Counsel; (3) limits the persons to whom Plaintiff's Counsel may show the photos to Plaintiff and her witnesses disclosed to the defendants, and only in the presence of Plaintiff's Counsel; and (4) orders that at the defendants' election, the photos will either be returned or destroyed following the resolution of this case. Plaintiff attaches her proposed Protective Order as Exhibit 1 to this Motion.

    3. The Defendants do not dispute the relevance of the requested photographs and physical descriptions. They, nonetheless, object to production, even under the proposed

Order. The Defendants object to showing the photographs to *any* of Plaintiff's witnesses and insist that Plaintiff and her Counsel view the photographs inside Chicago Police Headquarters.

4. In the last two years, two Courts in the Northern District of Illinois have ordered the City of Chicago to produce police photographs to Plaintiff's Counsel in the case at bar in other police misconduct cases, over the identical objections that the Defendants raise here. *See* Ex. 2, *Vargas v. Blyskal*, 02 C 5451 (N.D.Ill. May 14 and 27, 2003) (Alesia, J.) (unpublished orders); Ex. 3, *Williams v. Brown*, 01 C 3228 (N.D.Ill. June 27, 2002) (Schenkier, M.J.) (unpublished order). Like Judges Alesia and Schenkier, this Court should entrust the requested photographs to the care and custody of Plaintiff's Counsel under the proposed Protective Order.

## RELEVANT PROCEDURAL FACTS AND LOCAL RULE 37.2 COMPLIANCE

5. On May 27, 2004, Counsel for the City of Chicago (hereafter "City"), Arnold Park, telephoned Plaintiff's Counsel to inform Plaintiff of his intent to appear on behalf of the City. In recognition of the primacy of confirming the identities and roles of the necessary parties to this suit, Plaintiff's Counsel requested that the City produce certain documents (including photographs). Mr. Park agreed to produce documents to identify the Chicago police officers involved in the incidents.

6. Not having received any of the requested documents from the City or Individual Police Defendants, Plaintiff's Counsel met with Susan Sullivan, Counsel for the Individual Police Defendants, following the initial status conference in this matter on August 24, 2004. Plaintiff's Counsel offered to accept police photographs under a protective order similar to the one entered by Judge Alesia in *Vargas v. Blyskal*, 02 C

5451, a police misconduct case also involving Plaintiff's Counsel and the Corporation Counsel's Office for the City. Plaintiff sent a letter to all Defense Counsel reiterating the offer, along with a copy of the proposed Protective Order. (Ex. 4.)

7. On September 7, 2004, the Individual Police Defendants filed their Answers to Plaintiff's Complaint, denying any contact with Ms. Bond.

8. Pursuant to their obligations under Fed.R.Civ.P. 26(a)(1), the Individual Defendants produced some redacted police investigatory files. However, the Defendants failed to produce any police photographs or the bulk of the other requested documents needed to confirm the identities and roles of the abusive officers. Notably, Defense Counsel redacted the physical descriptions of the Individual Police Defendants from the investigatory files.

9. On October 8, 2004, Plaintiff served her first set of formal document requests and interrogatories on the City. Request Nos. 37-39 and 54-56 seek the production of relevant police photographs and documents that provide physical descriptions of the officers who may have been present during the abuse of Ms. Bond. (*See e.g.*, Ex. 5, Request No. 56.) Interrogatory No. 11 requested a log of the name, rank, star number, and unit of assignment corresponding to each photograph produced. (Ex. 6.)

10. Similarly, Plaintiff's Document Requests and Interrogatories to each of the Individual Police Defendants requested a recent photograph and the officer's physical description. (Ex. 7, Request No. 8; Ex. 8, Int. No. 1.)

11. On October 16, 2004, Plaintiffs' Counsel sent a letter to Counsel for the Individual Police Defendants, requesting the defendants to provide Plaintiff with "unredacted" copies of their Rule 26(a) documents that contained the physical

4

descriptions of officers involved in this case, reiterating that "confirmation of the identities of the appropriate individual defendants is a priority." (Ex. 9.)

12. Plaintiff's Counsel left repeated telephone messages for Defense Counsel between October 26 and November 30 to attempt to resolve any disputes over the disclosure of police photographs and physical descriptions. Plaintiff since learned that some of Defense Counsel were absent for legitimate personal reasons.

13. Following the November 30 status hearing before this Court, Counsel for the parties met and conferred regarding the production of police photographs under a protective order. Counsel also engaged in a series of telephone negotiations between November 30 and December 16. Despite reasonable attempts, the parties could not resolve their differences.

## ARGUMENT

14. The dispute boils down to two issues: (1) Whether witnesses to Ms. Bond's abuse should be allowed to view police photographs; and (2) Whether Plaintiff's Counsel can be entrusted with custody of police photos under the proposed protective order. The bases for Defendants' objections are twofold. *First*, Defendants claim that production to Counsel unfairly prejudices Defendants and may lead to misidentification. *Second*, the City claims that the production of police photographs to Plaintiff's Counsel under the Protective Order jeopardizes officer security. Defendants' objections should be denied for the reasons explained below.

## LEGAL STANDARD FOR INVOKING PRIVILEGE

15. Rule 26 provides that Plaintiffs "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1).

16. If Defendants seek to invoke a privilege, they bear the burden of justifying its application. *See Von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987); *Doe v. Hudgins*, 175 F.R.D. 511, 514 (N.D.Ill. 1997). To assert a claim of privilege against disclosure of police materials, the Defendants must make a "substantial threshold showing, that there are specific harms likely to accrue from disclosure of specific materials." *King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988) (Weinstein, J) (internal citations omitted). This threshold showing requires the Defendants to "explain the reasons for nondisclosure with particularity" because the court cannot conduct a meaningful analysis unless it knows "*how* disclosure under a protective order would cause the harm, and *how much* harm there would be." *Id.* (internal quotations omitted).

17. "Thus, before a Court need consider the merits of whether the privilege applies, 'the responsible official in the [governmental] department [asserting the privilege] must lodge a formal claim of privilege, after actual personal consideration, specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege.'" *Lewis v. Chicago*, 2004 WL 2608302 at *2 (N.D.Ill. Nov. 16, 2004), citing *Hernandez v. Longini*, 1997 WL 754041 at *4 (N.D.Ill. Nov. 13, 1997) (other internal citations omitted).[1]

---

[1] Unpublished cases are appended as Exhibit 11 to this Motion.

18. If the Defendants fail to make this showing, the court "has no choice but to order disclosure." *King*, 121 F.R.D. at 189 *quoting, Kelly v. City of San Jose*, 114 F.R.D. 653, 669 (N.D.Cal. 1987); *see also Lewis*, 2004 WL 2608302 at *2.

19. If and only if Defendants meet their "substantial threshold showing" of specific harm, the court should "balance the interests favoring and disfavoring disclosure, keeping in mind that the burden of persuasion rests on the party seeking to prevent disclosure." *King*, 121 F.R.D. at 190-191. In performing the balance, the Seventh Circuit counseled district courts to "compare the hardship to the party against whom discovery is sought, if discovery is allowed, with the hardship of the party seeking discovery if discovery is denied. [S]he must consider the nature of the hardship as well as its magnitude and thus give more weight to interests that have a distinctively social value than to purely private interests; and [s]he must consider the possibility of reconciling the competing interest through a carefully crafted protective order." *Marrese v. American Academy of Orthopaedic Surgeons*, 726 F.2d 1150, 1159 (7th Cir 1984) (en banc), *rev'd on other grounds*, 470 U.S. 373 (1985).

20. The balance of hardships is weighted in favor of disclosure in civil rights cases because: "The great weight of the policy in favor of discovery in civil rights actions supplements the normal presumption in favor of broad discovery . . . Together, these powerful public policies suggest that the defendants' case for restricted disclosure must be extremely persuasive." *King*, 121 F.R.D. at 195; *Lewis*, 2004 WL 2608302 at *4, citing *Wood v. Breier*, 54 F.R.D. 7, 10 (E.D.Wis. 1972).

## I. Defendants' Unfair Prejudice Objection Does Not Amount to Good Cause Justifying the Entry of a Protective Order.

21. The Court should reject Defendants' "unfair prejudice" objection and insistence upon criminal identification procedures during discovery in a civil case.

22. Courts in this District have rejected the City's objection on at least three occasions. *First*, in *Williams v. Brown*, 01 C 3228 (N.D. Ill. June 27, 2002) (Ex. 3), a class action illegal search and seizure case against Chicago police officers, the City and police officers objected to producing the police photographs to Plaintiffs' Counsel and insisted upon showing the photos at Police Headquarters "to preserve the integrity of any identifications that may be made," and to prevent witness coaching. *Id.* at 14. Judge Schenkier denied the objection and ordered the City to produce the forty requested police photographs to Plaintiff's Counsel in the case at bar, ruling that "the defendants have not established good cause to believe that there is a particularized integrity concern with respect to an identification process that warrants a protective order." *Id.* at 15.

23. Plaintiff's Counsel should be allowed to exercise their independent judgment regarding whether and when they should show the photographs to Ms. Bond or witnesses to further their investigation or to prepare for depositions and trial. As noted by the *Williams* court, these decisions are quintessential strategic judgments traditionally left to counsel. *Id.* at 15-18. The Defendants here will be free to depose and cross-examine Ms. Bond and her witnesses, including showing them the police photos to probe the strength of their identification. *Id.* at 16-17. As in *Williams*, the Court should refuse to "impose on the plaintiff a strategic approach to that the defendants would wish them to make." *Id.* at 18.

24. Judge Alesia also ordered the City to produce police photographs to Plaintiff's Counsel in this case in a Chicago police brutality case. *Vargas v. Blyskal*, O2 C 5451 (N.D.Il. May 14, 2003) (Ex. 2.) The Court recognized that the viewing of photographs by the witnesses was necessary to assist the plaintiff in his attempt to identify certain police officers. Similar to the Order proposed here, Judge Alesia authorized Plaintiff's Counsel to retain custody of the photographs and to show the photographs to the plaintiff "and witnesses who have been disclosed to defendants as witnesses to the incident underlying the complaint." *Id.*

25. Judge Aspen similarly rejected the City's "unfair prejudice" argument in *Montano v. City of Chicago*, 97 C 8035 (N.D. Il. Nov. 20, 1998) (unpublished order) (Ex. 10). As here, the police photographs were "obviously relevant" to the plaintiffs' investigation into the identities of various police officers in the police misconduct case. *Id.* Nonetheless, the City insisted that the viewing of photographs take place at Police Headquarters, complaining that allowing people to view photographs at plaintiffs' counsels' office would permit "fellow witnesses' reactions, suggestions or discussions to taint the process." *Id.* Judge Aspen flatly rejected the notion that the defendants' objection was legitimate in the context of a civil case and saw "no reason why we should ignore the usual civil discovery rules." *Id.* Like Judge Schenkier in *Williams*, Judge Aspen found that if the defendants sought to challenge any identification, they should do so in the context of depositions or cross-examination at trial. *Id.* Accordingly, the Court ordered the production of police photographs to plaintiffs' counsel. *Id.*

26. Defendants' unfair prejudice claim has also been rejected by courts in police misconduct cases in other jurisdictions. See *Lozano v. City of New York*, 1992 WL

9

116433 at *2 (S.D.N.Y. 1992) (Ex. 11) (holding, "[B]ecause this is not a criminal case, the defendants' complaints that disclosure of the photos would constitute a 'selective lineup' are simply inapposite."); *Castro v. City of New York*, 1995 WL 699730 (S.D.N.Y. Nov. 28, 1995) (Ex.11) (ordering production of police photographs to plaintiff's counsel).

27. As the Courts in each of these cases recognized, the Federal Rules do not give civil defendants the right to watch how his opponent views evidence produced in discovery. As the *Castro* Court underscored, "The federal rules governing civil discovery do not authorize imposition… [of criminal photo array procedures] as a condition for producing concededly relevant documents." *Id.* at *1.

28. There can be no principled distinction made between the production of these photographs and the discovery of any other document or tangible thing in a civil case. Each day thousands of documents are produced in discovery across the nation, and parties are free to review the evidence in privacy, free from the scrutiny of the other side. Every day lawyers and clients meet to have privileged discussions concerning those produced documents. The federal rules do not authorize special burdens to be placed on a person prosecuting a civil police misconduct case.

29. Judge Zagel stands alone in requiring criminal identification procedures as a condition to the production of police photographs in civil discovery. *See Davis v. City of Chicago*, 219 F.R.D. 593 (N.D.Ill. 2004). This Court should reject *Davis* as an extreme outlier that impairs Counsels' ability to conduct an independent investigation, free of undue interference or oversight by the Defendants, and wrongfully allows Defendants to pry into and control Plaintiff's attorneys' investigatory thoughts and strategies (work product) and privileged conversations with their client.

30. Like all other courts who have addressed this issue, the Court should find that the Defendants have not shown particularized integrity concerns necessary to establish good cause for the entry of a protective order.

**II.      Defendants' Safety Objection is Without Evidentiary Support, Adequately Addressed by the Proposed Protective Order, and Outweighed by Plaintiff's Need for the Information in a Federal Civil Rights Prosecution.**

31. Defendants' conclusory assertion that showing police photographs to witnesses or releasing the photos to Plaintiff's Counsel would compromise safety is without merit.

32. Plaintiff has not found a single civil case in which a court denied witnesses the opportunity to view police photographs for identification purposes. Indeed, in two other police misconduct cases in this District in which Plaintiff's Counsel was personally involved, the Courts granted Counsel permission to show police photographs to witnesses. In *Williams v. Brown*, a class action challenging a police mass search and seizure involving a class of approximately **250** individuals, Judge Schenkier allowed Counsel to show photographs of approximately 40 officers to class members and witnesses, as long as those persons were disclosed to the defendants. (*See* Ex. 3.) In *Vargas v. Blyskal,* Judge Alesia permitted Counsel to show police photographs to the plaintiff and the civilian witnesses present during the charged police abuse. (Ex. 2.) Here, Plaintiff's Counsel seeks permission to show the photos to only a handful of disclosed witnesses, who are familiar with these individuals as Chicago police officers.

33. Defendants are unable to make the required threshold showing, by affidavits and evidence, that specific harm would accrue from showing the photos to the identified witnesses or entrusting the photos to the care and custody of Plaintiff's Counsel. Even if

11

they could, the balance of hardships weighs strongly in favor of disclosure to Plaintiff's

Counsel under the proposed protective order.

### A. Plaintiff's Need for the Photographs

34. The photographs are necessary to confirm the identities and roles of the officers

who abused Ms. Bond. As the Individual Police Defendants deny having any contact

with Ms. Bond, Plaintiff's need could not be more acute.

35. Fairness in the adversarial process depends on providing each litigant with the

ability to analyze critical evidence with the assistance of counsel. Counsel has

accumulated a significant amount of information and documents to sort out the identity

issue, including Counsel's personal observations of some of the officers in the field.

Plaintiff's Counsel should be allowed to review and analyze the police photographs in

conjunction with other information related to the officers' identities in the privacy of their

own office. Further, Counsel should be allowed the opportunity to make strategic

judgments whether and when to show witnesses the photographs.

36. As most of the witnesses in this case are low-income former public housing

residents without phones and whose homes are being demolished, it is even more critical

that the photos be entrusted with Counsel to insure a full and fair opportunity to

investigate the case and prepare for trial.

37. Moreover, the "strong public interest in uncovering civil rights violations" and

enforcing the "Nation's fundamental laws" counsels in favor of disclosure. *Soto v. City*

*of Concord*, 162 F.R.D. 603, 621 (N.D.Cal. 1995); *City of Riverside v. Rivera*, 477 U.S.

561, 564 (1986). As Judge Weinstein observed, "The interest that without doubt looms

largest in [civil rights] cases is the public interest in giving force to the federal civil rights

12

laws." *King*, 121 F.R.D. at 195. To withhold the photographs, Defendants' claim "must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action." *Id.* (citation omitted). Defendants do not come close to meeting this burden, as demonstrated below.

### B. Defendants' Purported Security Interest

38. Defendants' asserted security interests are unproven or, at best, uncertain. Moreover, they are amply safeguarded by Plaintiff's proposed Protective Order (Ex. 1).

39. Defendants are unable to provide any reason why Plaintiff's Counsel should not be trusted with the photographs under the proposed Order. Indeed, in one of the two cases in which federal judges in this District ordered the production of Chicago police photos to Plaintiff's Counsel in the case at bar, Judge Schenkier noted, "[T]here is no suggestion that has been made that the plaintiffs' counsel here are anything but honorable attorneys and officers of the court." Ex. 3, *Williams* at p.21. Neither the City nor Counsel for more than forty Chicago police officers ever raised an issue regarding the integrity with which Mr. Futterman maintained the photographs, and no police officer's security was compromised.

40. In addition, Defendants' purported security interests are overstated. During each of the incidents that they abused Ms. Bond, the officers made clear to Plaintiff and other witnesses that they were Chicago police officers. In addition, the crew that abused Ms. Bond regularly held themselves out as Chicago police officers to the members of the public housing communities on the South Side of Chicago, who are familiar with these notorious officers' physical appearances.

41. As noted above, Judges Alesia, Aspen, and Schenkier rejected the City's identical "security" objections in favor of production to the plaintiffs' counsel in similar circumstances. Federal courts in other jurisdictions have ordered the same. *See e.g.*, *Pridgen v. Doe*, 2000 WL 892873 (D.Md. 2000); *Castro*, 1995 WL 699730 at *1.

42. Defendants' claimed security interests are insufficient to overcome Plaintiff's need for the photographs and physical descriptions in this suit, which was brought to safeguard our nation's most fundamental and cherished rights.

WHEREFORE, Plaintiff respectfully requests that this Court Order:

a. the Defendant City of Chicago to produce recent color photographs of each and every male white or white Hispanic police officer assigned or detailed to Public Housing Unites 715 or 715B, between 4 p.m. and midnight on April 13, 2003, April 19, 2003, April 28, 2003, April 30, 2003, March 29, 2004, or March 30, 2004;

b. the Defendant City of Chicago to produce the photographs of the officers assigned to Unit 715 that were shown to Diane Bond on May 23, 2003;

c. the Defendant City of Chicago to produce documents concerning the physical descriptions of the Individual Police Defendants;

d. each of the Individual Police Defendants to produce a recent color photograph of himself; and

e. each of the Individual Police Defendants to provide Plaintiff's Counsel with his physical description in April 2003 and April 2004

under the conditions detailed in the Protective Order appended as Exhibit 1 and within five days of the entry of this Order.

14

Respectfully Submitted,

_____
One of Plaintiff's Attorneys

Date:  January 5, 2005

Craig B. Futterman
Andrew Janis, Senior Law Student
EDWIN F. MANDEL LEGAL AID CLINIC
University of Chicago Law School
6020 S. University
Chicago, IL  60637
(773) 702-9611

15

## **Attachments**

**Exhibit 1.**    Plaintiff's Proposed Protective Order

**Exhibit 2.**    *Vargas v. Blyskal*, 02 C 5451 (N.D.Ill. May 14 and 27, 2003) (unpublished orders)

**Exhibit 3.**    *Williams v. Brown*, 01 C 3228 (N.D.Ill. June 27, 2002) (unpublished order)

**Exhibit 4.**    Letter to Defense Counsel, dated August 24, 2004

**Exhibit 5.**    Plaintiff's First Request to Produce Documents to Defendant City of Chicago (excerpts)

**Exhibit 6.**    Plaintiff's First Set of Interrogatories to Defendant City of Chicago (excerpts)

**Exhibit 7**    Plaintiff's First Request to Produce Documents to Defendant Utreras (excerpts)

**Exhibit 8**    Plaintiff's First Set of Interrogatories to Defendant Utreras (excerpts)

**Exhibit 9**    Letter to Defense Counsel, dated October 16, 2004

**Exhibit 10**    *Montano v. City of Chicago*, 97 C 8035 (N.D.Ill. Nov. 20, 1998) (unpublished order

**Exhbit 11**    Copies of unreported opinions cited in Plaintiff's Motion to Compel:
  **a.** *Castro v. City of New York*, 1995 WL 699730 (S.D.N.Y. Nov. 28, 1995)
  **b.** *Lewis v. Chicago*, 2004 WL 2608302 (N.D.Ill. Nov. 16, 2004)
  **c.** *Hernandez v. Longini*, 1997 WL 754041 (N.D.Illl. Nov. 13, 1997)
  **d.** *Lozano v. City of New York*, 1992 WL 116433 (S.D.N.Y. Ap. 17, 2002)
  **e.** *Pridgen v. Doe*, 2000 WL 892873 (D.Md. May 26, 2000)

*See Case File*

*for*

*Exhibits*