**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**FILED**

FEB 17 2005 WH

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| DIANE BOND, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 2617 |
| | ) | |
| v. | ) | Judge Joan Lefkow |
| | ) | |
| | ) | Magistrate Judge Ashman |
| CHICAGO POLICE OFFICERS EDWIN | ) | |
| UTRERAS (Star No. 19901), et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT OFFICERS' MOTION TO QUASH PLAINTIFF'S SUBPOENA FOR DEFENDANT OFFICERS' PRIOR EMPLOYMENT RECORDS

Defendants, Edwin Utreras, Christ Savickas, Robert Stegmiller, Joseph Seinetz, Robert

Schultz, Nicholas Cortesi, Andrew Schoeff and John Cannon, (hereafter, "Defendant Officers")

by one of their attorneys, Susan E. Sullivan, respectfully move this Honorable Court to quash

Plaintiff Diane Bonds' subpoena served upon the Chicago Housing Authority for the personal

records and prior employment records of Officers Andrew Schoeff and Joseph Seinitz, or in the

alternative, for an *in camera* inspection of the records, redaction of the officers' and non-party

third persons' personal information in the records, and a designation by this Court that the

records are "Confidential Matter" protected by the order entered by this Court on February 2,

2005. In support of their motion, Defendant Officers state the following:

### INTRODUCTION

Plaintiff Diane Bonds (hereafter "Plaintiff") has filed a nine-count complaint bringing

claims under 42 U.S.C. § 1983 and state law against the City, eight named Chicago Police

officers and numerous unnamed Chicago Police officers. She alleges that a number of

unidentified Chicago Police officers, on five dates spanning two years, specifically 2003 through 2004, physically, mentally, and sexually abused and harassed her. *See* Plaintiff's Complaint, attached hereto as Exhibit A. Plaintiff states that although she had contact with the police, she was never arrested or taken to a police station as a consequence of her alleged interaction with the police officers. Plaintiff makes no allegation that she had any contact with any officer prior to 2003, nor does she allege that there was any abuse prior to 2003.

Because Plaintiff was never arrested on any of these alleged five occasions, there are no official police reports indicating which of the police officers, if any, were involved in the alleged abuse. To this date, Plaintiff has not positively identified any officer as one of the alleged abusers. Defendants have already produced almost four hundred (400) documents to Plaintiff detailing the Defendant Officers' assignments and activities on the alleged dates of incident as well as several completed investigations by the Office of Professional Standards initiated by Plaintiff's complaints to the police department. All Defendant Officers have also responded to Plaintiff's interrogatory requests.

However, Plaintiff now seeks the production of documents from a third-party former employer, the Chicago Housing authority, of two of the Defendant officers for the years 1994 - 1997, at least six years prior to the incidents that she has alleged in her complaint, by way of subpoena. Defendant Officers believe, upon information an belief, that the documents sought by Plaintiff's subpoena contain confidential matter and privileged matter of both the officers and non-party third persons, and other documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and thus request that the subpoena be quashed.

2

## ARGUMENT

**1.     Plaintiff's subpoena for the personal and employment records of Officers Andrew Schoeff and Joseph Seinitz should be quashed.**

Plaintiff has served upon the Chicago Housing Authority a subpoena commanding the production of "All records relating to Andrew Schoeff ... employee of the Chicago Housing Authority Police Department from 1994 - 1997 ... and Joseph Seinitz ...employee of the Chicago Housing Authority Police Department from 1994 - 1997." *See* Subpoena and Attachment Rider, attached hereto as Exhibit B. Plaintiff's subpoena request commands, among other things, the production of documents including, but not limited to: 1) "The entire personnel files of Schoeff and Seinitz;" 2) "Any and all documents included in and/or comprising the job applications of Schoeff and Seinitz;" 3) "Any and all records providing information as to whether Schoeff and Seinitz have ever fired their guns;" and 4) "Any and all records of any disciplinary complaints and investigations." *See* Exhibit B.

Fed. R. Civ. P. (26)(b) defines the scope of discovery as "any matter, not privileged, that is relevant to the claim or defense of any party. . . ." The documents sought by Plaintiff's subpoena, upon information and belief, do contain privileged matter such as medical information protected by doctor-patient privilege. Furthermore, the documents requested can in no way lead "relevant" discovery, nor are they themselves relevant or reasonably calculated to lead to the discovery of admissible evidence. Under Fed. R. Evid. 404, improper character evidence is inadmissible. Furthermore, prior "bad acts" evidence or "propensity evidence" is inadmissible under Fed. R. Evid. 404(b) to prove that a party acted on the occasion in question consistent with his "alleged bad character." *See Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496;

3

*United States v. Shriver*, 842 F. 2d 968 (7th Cir. 1988). A subpoena for documents that are privileged as well irrelevant and not reasonably calculated to lead to the discovery of admissible evidence should be quashed. Finally, the Courts have also limited discovery when the privacy interests of the officers are considered. In *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998), the Sixth Circuit recognized the privacy interests of police officers in the context of litigation discovery and upheld officers' rights to protect their personal security and bodily integrity by limiting discovery requests.

In this matter, Plaintiff seeks information regarding Officers Schoeff and Seinitz in an obvious attempt to uncover past "bad acts" evidence, evidence that is not admissible under the Federal Rules of Evidence. Plaintiff seeks documents as to whether either officer has ever been involved in a shooting despite the fact that there are no allegations regarding a shooting anywhere in Plaintiff's Complaint. Plaintiff seeks all documents relating to any discipline regarding any alleged misconduct by either officer with no time frame limit or limit as to subject matter. Moreover, all of the documents requested relate to Officers Schoeff and Seinitz's employment from 1994 - 1997, no less than six (6) years prior to any of the alleged incidents claimed by Plaintiff in her Complaint, incidents, if any, that are too remote in time to ever relate to any of Plaintiff's claims. Plaintiff is clearly subpoenaing the production of documents in an attempt to discover any past allegations of alleged misconduct against Officer Schoeff and Seinitz while employed by the Chicago Housing Authority. Any such evidence would be inadmissible, as it constitutes improper character evidence under Fed. R. Evid. 404 and is also too remote in time. *See also Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496; *United States v. Shriver*, 842 F. 2d 968 (7th Cir. 1988). Because the documents sought by Plaintiff are irrelevant and not

4

reasonably calculated to lead to the discovery of admissible evidence, the subpoena should be quashed.

Defendant Officers also believe, upon information and belief, that the documents contain personal information in not way related to Plaintiff's claims. The records likely contain dates of birth, social security numbers, home addresses, telephone numbers, insurance information, medical information that is protected by doctor-patient privilege and HIPPA, disciplinary histories, and other confidential material. These documents are neither relevant or reasonably calculated to lead to the discovery of admissible evidence. Furthermore the private information contained in the documents should not be disclosed to Plaintiff. *See Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998)

Because the documents sought by Plaintiff are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and because the documents sought contain private and confidential matter that Plaintiff in no way needs to prosecute her case, the subpoena should be quashed.

**2.      Assuming *Arguendo* that this Court declines to quash Plaintiff's subpoena, this Court should conduct an *In Camera* inspection of the documents, allow redaction of the officers' and third persons' personal information in the records, and designate the records "Confidential Matter" protected by the order entered by this Court on February 2, 2005.**

If this Court determines that the subpoena should not be quashed, Defendant Officers request that this Court conduct an *in camera* inspection of each of the requested documents. Upon information and belief, such an inspection will reveal that nothing contained in the files is relevant to, admissible, or can be used in this case. Defendant Officers request that after

5

reviewing such documents, this Court quash the subpoena served upon the Chicago Housing Authority.

Should this Court compel production of any of the respected documents, Defendant Officers request that the Court allow the redaction of the documents to remove personal information relating to the officers and other non-party third persons, including but not limited to dates of birth, social security numbers, home addresses, phone numbers, drivers' license numbers, insurance policy information, medical records and medical information, etc. This step must be taken to ensure the safety and privacy of the officers and their families and to protect HIPPA related documents, doctor-patient privilege, and otherwise privileged and confidential material and information. *See Kallstrom v. City of Columbus*, 136 F.3d 1055, 1069-70 (6th Cir. 1998) (holding that a city's release of personal information endangered the officers and their families and violated the officers' Fourteenth Amendment due process rights). In addition, if this Court compels production of any of the documents requested in this subpoena, Defendant Officers request that this Court designate the records "Confidential Matter" protected by the order entered by this Court on February 2, 2005.

## CONCLUSION

WHEREFORE, Defendant Officers respectfully request that Plaintiff's Subpoena for the Chicago Housing Authority Employment Records of Officers Andrew Schoeff and Joseph Seinitz be quashed or grant the alternative relief requested.

6

Respectfully submitted,

Susan E. Sullivan
Assistant Corporation Counsel

30 N. LaSalle Street
Suite 1400
Chicago, Illinois 60602
(312) 742-0117
(312) 744-6566 (FAX)
ATTY. NO.  06238201

7

RECEIVED

APR 1 2 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DIANE BOND,                                    )
                                               )
            Plaintiff                          )
                                               )
      v.                                       )
                                               )
CHICAGO POLICE OFFICERS EDWIN                  )
UTRERAS (Star No. 19901), ANDREW               )
SCHOEFF (Star No. 4436), CHRIST                )
SAVICKAS (Star No. 5991), ROBERT               )
STEGMILLER (Star No. 18764), JOSEPH            )
SEINITZ (Star No. 4947), ROBERT                )
SCHULTZ (Star No. 13882), NICHOLAS             )
CORTESI (Star No. 15112), JOHN CANNON          )
(Star No. 12241), ROBERT FRANKS (Star          )
No. 15935), WAYNE NOVY (Star No. 2733),        )
and JOHN DOES ONE through FIVE, in their       )
individual capacities; and the CITY OF         )
CHICAGO,                                       )
                                               )
            Defendants.                        )

EXHIBIT
A

No. 04C 2617
JURY TRIAL DEMANDED

JUDGE JOAN H. LEFKOW

MAGISTRATE JUDGE ASHMAN

FILED

APR 2 9 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT

Plaintiff DIANE BOND, by counsel, for her complaint against defendants CHICAGO

POLICE OFFICER EDWIN UTRERAS (Star No. 19901), CHICAGO POLICE OFFICER

ANDREW SCHOEFF (Star No. 4436), CHICAGO POLICE OFFICER CHRIST SAVICKAS (Star

No. 5991), CHICAGO POLICE OFFICER ROBERT STEGMILLER (Star No. 18764), CHICAGO

POLICE OFFICER JOSEPH SEINITZ (Star No. 4947), CHICAGO POLICE OFFICER ROBERT

SCHULTZ (Star No. 13882), CHICAGO POLICE OFFICER NICHOLAS CORTESI (Star No.

15112), CHICAGO POLICE OFFICER JOHN CANNON (Star No. 12241), CHICAGO POLICE

1

OFFICER ROBERT FRANKS (Star No. 15935), CHICAGO POLICE OFFICER WAYNE NOVY (Star No. 2733), CHICAGO POLICE OFFICERS JOHN DOE ONE through FIVE, all in their individual capacities,[1] and THE CITY OF CHICAGO, alleges as follows:

## INTRODUCTION

1. This is a civil rights action for damages and injunctive relief brought pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, 28 U.S.C. § 2201 et seq., the Illinois Hate Crimes Act, and Illinois common law for the torts of assault and battery, false arrest and imprisonment, and intentional infliction of emotional distress.

2. Plaintiff Diane Bond, a forty-nine-year-old African-American woman, sues the Individual Defendants for their ongoing physical, sexual, and psychological abuse and intimidation of Ms. Bond in and around her own home, perpetrated under their color of authority as Chicago Police Officers, and motivated by Defendants' gender and racial anima against Ms. Bond. Defendants have preyed upon Ms. Bond for nearly a year, causing her to live in a state of fear.

## JURISDICTION AND VENUE

3. The jurisdiction of the Court is conferred by 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction is conferred by 28 U.S.C. § 1367.

4. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391, because all defendants reside in the district.

---

1 Hereafter, Defendants Utreras, Schoeff, Savickas, Stegmiller, Seinitz, Schultz, Cortesi, Cannon, Franks, Novy, and John Does One through Five shall collectively be referred to as the "Individual Defendants."

2

## PARTIES

5.    Plaintiff Diane Bond is a forty-nine-year-old African-American woman, a resident of Cook County, Illinois, and a United States citizen.

6.    Defendants Edwin Utreras, Andrew Schoeff, Christ Savickas, Robert Stegmiller, Joseph Seinitz, Robert Schultz, Nicholas Cortesi, John Cannon, Robert Franks, and Wayne Novy are sworn officers of the Chicago Police Department who are sued in their individual capacities for actions they took by virtue of their authority as police officers.

7.    Defendant Edwin Utreras, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

8.    Defendant Andrew Schoeff, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

9.    Defendant Christ Savickas, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

10.    Defendant Robert Stegmiller, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

11.    Defendant Joseph Seinitz, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

3

12.     Defendant Robert Schultz at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

13.     Defendant Nicholas Cortesi at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

14.     Defendant John Cannon at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

15.     Defendant Robert Franks at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

16.     Defendant Wayne Novy at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago, and acted in the course and within the scope of his employment.

17.     Defendant Chicago Police Officers John Does One through Five are sworn male, Caucasian officers of the Chicago Police Department whose names and star numbers are not now known to Plaintiff. These defendants are sued in their individual capacities for actions they took by virtue of their authority as Chicago Police Officers. At all times material to this Complaint, these defendants acted under color of state law as police officers of the City of Chicago and within the scope of their employment.

4

18.     Defendant City of Chicago is an Illinois municipal corporation, and was, at all times material to this Complaint, the employer and principal of Defendants Utreras, Schoeff, Savickas, Stegmiller, Seinitz, Schultz, Cortesi, Cannon, Franks, Novy, and John Does One through Five.

## FACTS

### April 13, 2003 Incident

19.     At approximately 5:00 p.m. on April 13, 2003, Plaintiff Diane Bond walked up the stairs of her Stateway Gardens apartment building, located at 3651 South Federal in Chicago, Illinois.

20.     As she approached her home, Ms. Bond encountered four or more of the Individual Defendants.

21.     One of the Individual Defendants, without any provocation or lawful justification, pressed his gun against Ms. Bond's temple and demanded to know where she lived. With his gun pressed against Ms. Bond's head, he tore her house keys from her hand, opened the door to her home, and forced Ms. Bond inside the apartment.

22.     After the Defendant opened the door to Ms. Bond's home, three or more additional Individual Defendants entered Ms. Bond's apartment.

23.     The Individual Defendants imprisoned Ms. Bond in her own home, handcuffing her behind her back, while they searched her home.

24.     The Individual Defendants threw Ms. Bond's personal belongings throughout the apartment and damaged her personal property. Among other things, they broke her drinking glasses and certain objects that held religious meaning to Ms. Bond.

5

25.     Ms. Bond's then teen-age son and his friend were also present inside her home. Ms.
Bond was forced to watch in handcuffs as two of the Individual Defendants entered her son's
bedroom, handcuffed her son and his friend locking their hands behind their backs, and beat them.

26.     In response to Ms. Bond's verbal protest of Defendants' search of her home and
beating of her son, one of the Individual Defendants yelled, "Shut up, Cunt!" as he struck her in the
face and kicked her in the side.

27.     He then knocked down a painting of a brown-skinned Jesus Christ that was hanging
above Ms. Bond's head.  When she asked him to pick up her picture of Christ, he cursed, "Fuck
Jesus and you too, Bitch," mocking her deeply held religious beliefs.

28.     Another Individual Defendant forced Ms. Bond up, as she sat crying on the floor. He
took Ms. Bond inside her bedroom, closed the bedroom door, removed his police vest from his body,
and laid the vest down near Ms. Bond's bed.  He then removed Ms. Bond's handcuffs, and
threatened to plant drugs on her and to falsely charge her with a crime if she did not do what he
demanded.

29.     A third Individual Defendant entered Ms. Bond's bedroom, seized her by her arm, and
ordered her to accompany him inside her closet-sized bathroom. He closed the door to the bathroom
and stood within a foot or two of her body. The Defendant ordered Ms. Bond to unfasten her bra and
shake it out.  He commanded that she open her pants and pull them down.  He then ordered that she
place her full hand inside the front of her panties.  The Defendant then forced her to push the front of
her panties away from her body and toward him, exposing the most private areas of her body, as he
stared and smirked.  He then compelled Ms. Bond to bring her panties back in contact with her pubic
area, keeping her hand inside the front side of her underwear near her vagina.  He ordered Ms. Bond

6

to do it again. And again. And again. The Individual Defendant threatened to incarcerate Ms. Bond, if she did not submit to his commands.

30.     In the hope to end her abuse, Ms. Bond held out her hands in front of her body so that the Defendant could handcuff her again and take her to jail. Instead, he opened the door to the bathroom and ordered Ms Bond to sit on the floor, while another Individual Defendant repeatedly beat a middle-aged African-American man, whom Defendants had brought inside Ms. Bond's home without her permission or consent. The Defendant punched him again in the face causing him to fall into Ms. Bond's framed painting of the Last Supper and breaking the glass inside the frame.

31.     The Individual Defendants compelled Ms. Bond to sit on the floor and watch, while they forced her son to perform a sadistic, racist, and demeaning show for the Officers, at the threat of incarceration. They uncuffed Ms. Bond's son and his friend and ordered them to punch and beat up the middle-aged African-American man whom Defendants brought uninvited inside Ms. Bond's home. The Individual Defendants laughed as they demeaned Ms. Bond and her son.

32.     The Individual Defendants left Ms. Bond's home laughing, after they had degraded Ms. Bond and her son.

33.     At no time on April 13, 2003, did Ms. Bond give her permission or consent to any of the Individual Defendants to enter or search her home.

34.     At no time did Ms. Bond provide the Individual Defendants with probable cause or any legal justification to search or seize her person, her home, or her personal belongings.

35.     The Individual Defendants did not possess any search warrant to search Ms. Bond's home nor an arrest warrant to arrest anyone in Ms. Bond's household.

36.     The Individual Defendants' physical and mental abuse and humiliating search of Ms. Bond were excessive, unreasonable, and unsupported by any legal justification.

37.     On April 14, 2003, Ms. Bond reported the Individual Defendants' abuse of their police powers to the City of Chicago's Office of Professional Standards.

### April 28, 2003

38.     At approximately 7:30 p.m., on April 28, 2003, two of the Individual Defendants seized Ms. Bond in the stairway leading to her apartment, without any probable cause or other lawful justification.

39.     They dragged her up the stairs by her coat.

40.     The Defendants shouted and cursed at Ms. Bond, "Give me your fucking keys!" As one of the Individual Defendants held Ms. Bond by her coat, the other demanded Ms. Bond's house keys and struck Ms. Bond in her face, causing her to urinate on herself out of fear.

41.     Defendants seized Ms. Bond's keys from her person against her will and used the keys to unlock the front door to her home.

42.     Five or more of the Individual Defendants entered Ms. Bond's home without her permission or consent.

43.     The Defendants also seized two young African-American men and brought them inside Ms. Bond's home without her permission or consent.

44.     Members of the Individual Defendants searched through Ms. Bond's home and possessions. When Ms. Bond begged them not to destroy certain items of religious significance, one of the Individual Defendants intentionally knocked Ms. Bond's icon of the Virgin Mary to the floor, broke the statue, and mocked Ms. Bond and her beliefs. "Fuck the Virgin Mary," he said.

8

45.     Three of the Individual Defendants, all white male Chicago Police Officers, demanded that Ms. Bond join them inside her bedroom. They ordered her to undress.

46.     One of the Individual Defendants thrust a pair of needle-nose pliers in Ms. Bond's face and threatened to pull out her teeth, unless she removed her clothes in the presence of the three white male officers. The Defendants forced Ms. Bond to pull down her pants and underwear, exposing her genitalia to the male Defendants. The Individual Defendants further commanded that Ms. Bond reach inside her vagina as she stood before them.

47.     The Individual Defendants threatened to plant drugs on her and incarcerate her, and otherwise verbally abused, intimidated, and humiliated her.

48.     At no time on April 28, 2003 did Ms. Bond give her permission or consent to any of the Individual Defendants to enter or search her home or to search her body.

49.     The Individual Defendants did not possess any search warrant to search Ms. Bond's home nor an arrest warrant to arrest anyone in Ms. Bond's household.

50.     At no time did Ms. Bond provide the Individual Defendants with probable cause or any legal justification to search or seize her person, her home, or her personal belongings.

51.     The Individual Defendants' physical abuse and humiliating search of Ms. Bond were excessive, unreasonable, and unsupported by any legal justification.

52.     Ms. Bond filed a second official misconduct complaint with the City of Chicago's Office of Professional Standards against the Individual Defendants for their abuse on April 28, 2003.

**April 30, 2003**

53.     On April 30, 2003, at around 11:30 p.m., two of the Individual Defendants confronted Ms. Bond in the lobby of her apartment building at 3651 South Federal in Chicago.

9

54.     One of the Defendants seized Ms. Bond by her arm, and demanded the keys to her home.

55.     As Ms. Bond stood in fear of another assault, the Defendant grabbed Ms. Bond around her throat, pushed her up against the elevator door to her apartment building, and threatened, "I'll beat your motherfucking ass."

56.     Ms. Bond cried for help, as the Defendant choked and cursed her.

57.     Despite Ms. Bond's pleas, the second Individual Defendant stood by and kept a look out for his partner, while he choked Ms. Bond. He facilitated and assisted Defendant's choking of Ms. Bond, and refused to intercede despite a reasonable opportunity to do so. When a private citizen pleaded with him to aid Ms. Bond, the second Individual Defendant thumped his hand against the man's chest and refused to intervene.

58.     Other residents from the building responded to Ms. Bond's cries for help.

59.     Due to their intervention, the Defendants ultimately released Ms. Bond's throat and told her to "get the fuck out of here."

60.     At no time did Ms. Bond provide the Individual Defendants with probable cause or any legal justification to seize her person.

61.     The Individual Defendants' seizure and physical abuse of Ms. Bond were unreasonable, excessive, and unsupported by any legal justification.

**March 29 and 30, 2004**

62.     At approximately 11:40 p.m., on March 29, 2004, Ms. Bond was walking down the stairs of her apartment building at 3651 South Federal.

10

63.    The same Defendant who had choked Ms. Bond in April 2003 confronted her in the stairwell with a screwdriver in his hand, along with another Individual Defendant. The Defendant who had choked Ms. Bond ordered her to come to him and threatened to stick her in the neck with the screwdriver.

64.    The two Individual Defendants seized Ms. Bond and wrestled her to the ground. They pulled and twisted Ms. Bond's arm behind her back, causing her extreme pain, and forced handcuffs around her wrists. Ms. Bond screamed and cried for help, in fear for her life and of further sexual abuse.

65.    As Ms. Bond continued to scream for help, the Individual Defendants pulled her off of the ground and removed her handcuffs. One Individual Defendant placed his finger over his lips, and warned her not to say anything about what happened.

66.    The next night, March 30, 2003, after 8:00 p.m., the same Individual Defendant who had warned her not to say anything about the incident stood outside Ms. Bond's home.

67.    Ms. Bond emerged wearing a sling on her right arm that the Defendant had pulled and twisted the night before. The Defendant called to Ms. Bond and nodded at her arm, "What happened to you?" he mocked in feigned ignorance.

68.    At no time did Ms. Bond provide the Individual Defendants with probable cause or any legal justification to seize her person.

69.    The Individual Defendants' seizure and physical abuse of Ms. Bond were unreasonable, excessive, and unsupported by any legal justification.

11

## ALLEGATIONS OF INTENTIONAL CONDUCT AND CAUSATION

70.     Each of the Individual Defendants acted or failed to act knowingly and intentionally, maliciously, wantonly or with reckless or callous disregard of, or indifference to, the rights of Ms. Bond.

71.     The Individual Defendants' seizures of Ms. Bond, the searches of her body, home, and belongings, physical beatings, physical abuse, choking, assaults, intimidation, and humiliation of Ms. Bond, destruction of her property, and vilification of Ms. Bond's religious beliefs and certain icons were undertaken with the intent to discriminate against Ms. Bond's on account of her gender, race, and the color of her skin.

72.     By their actions and omissions, the Individual Defendants violated and abused Ms. Bond's body and home, desecrated her most treasured icons and religious beliefs, violated her Constitutional rights, and robbed Ms. Bond of any feeling of security, leaving Ms. Bond traumatized and violated, in a constant state of fear in and around her own home.

73.     As a direct and proximate result of the conduct of the Individual Defendants described above, Ms. Bond suffered and continues to suffer mental and emotional distress, including but not limited to extreme fear, anxiety, mental pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to her self esteem, and the loss of the sense of personal safety in and around her home. In addition, Ms. Bond suffered physical pain to her head, neck, face, and eye; she suffered and continues to suffer intense pain in her right arm, which was required to be immobilized in a sling; and she was deprived of personal property inside her home.

12

CLAIM I: FOURTH AND FOURTEENTH AMENDMENTS
(Illegal Search of Person, Home, and Effects)

74.     Plaintiff realleges and incorporates herein paragraphs 1 through 73 above.

75.     Plaintiff asserts Claim I of this action against Individual Defendants in their individual capacities. Claim I arises under 42 U.S.C. § 1983.

76.     The Individual Defendants' unreasonable and illegal searches of Plaintiff's person, home, and personal possessions, undertaken without a warrant, probable cause, or reasonable suspicion, deprived Plaintiff of her Fourth and Fourteenth Amendment rights to be secure in her person, home, papers, and effects against unreasonable searches and seizures.

77.     The aforementioned actions and omissions in the face of a Constitutional duty to intercede by the Individual Defendants were the direct and proximate cause of Plaintiff's Constitutional violations, physical and emotional injuries, loss of personal freedom, and loss of personal property, as set forth more fully above.

78.     Each of the Individual Defendant's actions and omissions was intentional, willful, and exhibited a conscious disregard or reckless indifference to Plaintiff's rights. The award of punitive damages against each Defendant is necessary to punish him for his misconduct, and to deter similar misconduct.

WHEREFORE, Plaintiff prays that the Court:

(A)     Enter a declaratory judgment that the Individual Defendants violated Plaintiff's right to be secure in her person, home, papers, and effects as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

13

(B)     Enter an appropriate Protective Order, preliminary injunction and then a permanent injunction enjoining the Individual Defendants from their ongoing physical, sexual, and psychological abuse of Plaintiff;

(C)     Award Plaintiff judgment against each of the Individual Defendants, jointly and severally, for actual compensatory damages in an amount to be determined at trial;

(D)     Award Plaintiff judgment against each of the Individual Defendants, jointly and severally, for appropriate punitive damages in an amount to be determined at trial;

(E)     Award costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

(F)     Grant such other and further relief as this Court deems equitable and just.

### CLAIM II:  FOURTH AND FOURTEENTH AMENDMENTS
(Unlawful and Unreasonable Seizure and Detention)

79.     Plaintiff realleges and incorporates herein paragraphs 1 through 73 above.

80.     Plaintiff asserts Claim II of this action against Individual Defendants in their individual capacities.  Claim II arises under 42 U.S.C. § 1983.

81.     The Individual Defendants' false arrest of Plaintiff and unlawful and unreasonable seizure of Plaintiff's person and effects without a warrant, probable cause, or reasonable suspicion, deprived Plaintiff of her Fourth and Fourteenth Amendment rights to be secure in her person, home, papers, and effects against unreasonable searches and seizures.

82.     The aforementioned actions and omissions in the face of a Constitutional duty to intercede by the Individual Defendants were the direct and proximate cause of Plaintiff's Constitutional violations, physical and emotional injuries, loss of personal freedom, and loss of personal property, as set forth more fully above.

14

83.     Each of the Defendant's actions and omissions was intentional, willful, and exhibited a conscious disregard or reckless indifference to Plaintiff's rights. The award of punitive damages against each Defendant is necessary to punish each Defendant for his misconduct, and to deter similar misconduct.

WHEREFORE, Plaintiff prays that the Court:

(A)     Enter a declaratory judgment that the Individual Defendants violated Plaintiff's right to be secure in her person, home, papers, and effects against unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

(B)     Enter an appropriate Protective Order, preliminary injunction and then a permanent injunction enjoining the Individual Defendants from their ongoing physical, sexual, and psychological abuse of Plaintiff;

(C)     Award Plaintiff judgment against each of the Individual Defendants, jointly and severally, for actual compensatory damages in an amount to be determined at trial;

(D)     Award Plaintiff judgment against each of the Individual Defendants, jointly and severally, for appropriate punitive damages in an amount to be determined at trial;

(E)     Award costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

(F)     Grant such other and further relief as this Court deems equitable and just.

### CLAIM III: FOURTH AND FOURTEENTH AMENDMENT
### (Excessive Force)

84.     Plaintiff realleges and incorporates herein paragraphs 1 through 73 above.

85.     Plaintiff asserts Claim III of this action against the Individual Defendants in their individual capacity. Claim III arises under 42 U.S.C. § 1983.

15

86.    The Individual Defendants' physical beating, physical abuse, choking, assault, intimidation, and humiliation of Plaintiff without probable cause deprived Plaintiff of her Fourth and Fourteenth Amendment rights to be free from the use of excessive and unreasonable force.

87.    The aforementioned actions and omissions in the face of a Constitutional duty to intercede by the Individual Defendants were the direct and proximate cause of Plaintiff's Constitutional violations, physical and emotional injuries, destruction of her personal property, and loss of personal freedom, as set forth more fully above.

88.    Each of the Defendant's actions and omissions was intentional, willful, and exhibited a conscious disregard or reckless indifference to Plaintiff's rights. The award of punitive damages against each Defendant is necessary to punish each Defendant for his misconduct, and to deter similar misconduct.

WHEREFORE, Plaintiff prays that the Court:

(A)    Enter a declaratory judgment that the Individual Defendants violated Plaintiff's right to be free from the use of excessive and unreasonable force as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

(B)    Enter an appropriate Protective Order, preliminary injunction and then a permanent injunction enjoining the Individual Defendants from their ongoing physical, sexual, and psychological abuse of Plaintiff;

(C)    Award Plaintiff judgment against each of the Individual Defendants, jointly and severally, for actual compensatory damages in an amount to be determined at trial;

(D)    Award Plaintiff judgment against each of the Individual Defendants, jointly and severally, for appropriate punitive damages in an amount to be determined at trial;

16

(E)     Award costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

(F)     Grant such other and further relief as this Court deems equitable and just.

### CLAIM IV: FOURTEENTH AMENDMENT
### (Equal Protection)

89.     Plaintiff realleges and incorporates herein paragraphs 1 through 73 above.

90.     Plaintiff asserts Claim IV of this action against the Individual Defendants in their individual capacities. Claim IV arises under 42 U.S.C. § 1983.

91.     The actions and omissions of the Individual Defendants, in seizing Plaintiff, searching her body, home, and belongings, physical beating and abusing her, assaulting, intimidating, and humiliating her, were undertaken with the intent to discriminate against Plaintiff on account of Plaintiff's gender, race, and color of her skin, denying Plaintiff of her Fourteenth Amendment right to equal protection under the law.

92.     The Individual Defendants singled Plaintiff out for abuse (as set forth more fully above) and treated her differently from other similarly situated persons. The Individual Defendants' differential treatment of Plaintiff was intentional, malicious, and motivated by ill-will. Their differential treatment was also motivated by their gender and racial anima. In addition, their differential treatment of Plaintiff was arbitrary and irrational.

93.     The aforementioned actions and omissions in the face of a Constitutional duty to intercede by the Individual Defendants were the direct and proximate cause of Plaintiff's Constitutional violations, physical and emotional injuries, loss of personal freedom, and loss of personal property, as set forth more fully above.

94.    Each of the Defendant's actions and omissions was intentional, willful, and exhibited a conscious disregard or reckless indifference to Plaintiff's rights. The award of punitive damages against each Defendant is necessary to punish each Defendant for his misconduct, and to deter similar misconduct.

WHEREFORE, Plaintiff prays that the Court:

(A)    Enter a declaratory judgment that the Individual Defendants violated Plaintiff's right to equal protection under the law as guaranteed by the Fourteenth Amendment to the United States Constitution;

(B)    Enter an appropriate Protective Order, preliminary injunction and then a permanent injunction enjoining the Individual Defendants from their ongoing physical, sexual, and psychological abuse of Plaintiff;

(C)    Award Plaintiff judgment against each of the Individual Defendants, jointly and severally, for actual compensatory damages in an amount to be determined at trial;

(D)    Award Plaintiff judgment against each of the Individual Defendants, jointly and severally, for appropriate punitive damages in an amount to be determined at trial;

(E)    Award costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

(F)    Grant such other and further relief as this Court deems equitable and just.

### CLAIM V: ILLINOIS HATE CRIME STATUTE

95.    Plaintiff realleges and incorporates herein paragraphs 1 through 73 above.

96.    Plaintiff asserts Claim V of this complaint, arising under the private right of action included in the Illinois Hate Crimes Statute, 720 ILCS 5/12-7.1, against the Individual Defendants

18

and their employer, the City of Chicago. This Court has jurisdiction of this claim under 28 U.S.C. §
1367.

97.     The Individual Defendants' assault, battery, trespass to her home, and damage to her
property, as set forth more fully above, were intentional, willful, wanton, malicious, and motivated,
in whole or in part, by the Plaintiff's gender, race, color, and ancestry, in violation of Illinois statute
720 ILCS 5/12-7.1(a).

98.     The aforementioned actions of the Individual Defendants were the direct and
proximate cause of Plaintiff's physical and emotional injuries and loss of personal property, as set
forth more fully above.

99.     The actions committed by the Individual Defendants were undertaken within the
scope of their employment as police officers of the City of Chicago.

WHEREFORE, Plaintiff prays that the Court:

(A)     Award Plaintiff judgment against each of the Individual Defendants and the City of
Chicago, jointly and severally, for actual compensatory damages in an amount to be determined at
trial;

(B)     Award Plaintiff judgment against each of the Individual Defendants (excluding the
City of Chicago), jointly and severally, for appropriate punitive damages in an amount to be
determined at trial;

(C)     Award costs, expenses, and reasonable attorneys' fees;

(D)     Grant such other and further relief as this Court deems equitable and just.

## CLAIM VI: ILLINOIS BATTERY

100.    Plaintiff realleges and incorporates herein paragraphs 1 through 73 above.

19

101.    Plaintiff asserts Claim VI of this complaint, arising under Illinois common law, against the Individual Defendants and their employer, the City of Chicago. This Court has jurisdiction of this claim under 28 U.S.C. § 1367.

102.    The Individual Defendants subjected Plaintiff to contact of an insulting and provoking nature and caused Plaintiff bodily harm, directly and proximately causing Plaintiff's physical and emotional injuries, as set forth above. The Individual Defendants thereby subjected Plaintiff to the tort of battery under Illinois law.

103.    The Individual Defendants' actions and omissions, as set forth above, were intentional, willful, wanton, malicious, and without probable cause, provocation, or legal justification, and/or with reckless disregard for their natural consequences.

104.    The actions committed by the Individual Defendants described above were undertaken within the scope of their employment as police officers of the City of Chicago.

WHEREFORE, Plaintiff prays that the Court:

(A)    Award Plaintiff judgment against each of the Individual Defendants and the City of Chicago, jointly and severally, for actual compensatory damages in an amount to be determined at trial;

(B)    Award Plaintiff judgment against each of the Individual Defendants (excluding the City of Chicago), jointly and severally, for appropriate punitive damages in an amount to be determined at trial;

(C)    Award costs, expenses, and reasonable attorneys' fees;

(D)    Grant such other and further relief as this Court deems equitable and just.

20

## CLAIM VII:  ILLINOIS FALSE ARREST AND IMPRISONMENT

105.    Plaintiff realleges and incorporates herein paragraphs 1 through 73 above.

106.    Plaintiff asserts Claim VII of this complaint, arising under Illinois common law, against the Individual Defendants and their employer, the City of Chicago.  This Court has jurisdiction of this claim under 28 U.S.C. § 1367.

107.    The Individual Defendants' seizure and arrest of the Plaintiff without a warrant and without probable cause were intentional, willful, wanton, and unreasonable; they denied Plaintiff her personal liberty against her will; and they constitute the tort of false arrest and imprisonment under Illinois law.  Further, these actions directly and proximately caused Plaintiff's injuries as set forth more fully above.

108.    The actions committed by the Individual Defendants described above were undertaken within the scope of their employment as police officers of the City of Chicago.

WHEREFORE, Plaintiff prays that the Court:

(A)    Award Plaintiff judgment against each of the Individual Defendants and the City of Chicago, jointly and severally, for actual compensatory damages in an amount to be determined at trial;

(B)    Award Plaintiff judgment against each of the Individual Defendants (excluding the City of Chicago), jointly and severally, for appropriate punitive damages in an amount to be determined at trial;

(C)    Award costs, expenses, and reasonable attorneys' fees;

(D)    Grant such other and further relief as this Court deems equitable and just.

21

CLAIM VIII: ILLINOIS INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

109.    Plaintiff realleges and incorporates herein paragraphs 1 through 73 above.

110.    Plaintiff asserts Claim VIII of this action, an Illinois common law action for intentional infliction of emotional distress, against the Individual Defendants and their employer, the City of Chicago. This Court has jurisdiction of this claim under 28 U.S.C. § 1367.

111.    The actions committed by the Individual Defendants as described above were extreme and outrageous; they were undertaken willfully, wantonly and maliciously, with the intent to cause Plaintiff severe emotional distress; and they caused and continue to cause Plaintiff severe emotional distress.

112.    The actions committed by the Individual Defendants described above were undertaken within the scope of their employment as police officers of the City of Chicago.

WHEREFORE, Plaintiff prays that the Court:

(A)    Award Plaintiff judgment against each of the Individual Defendants and the City of Chicago, jointly and severally, for actual compensatory damages in an amount to be determined at trial;

(B)    Award Plaintiff judgment against each of the Individual Defendants (excluding the City of Chicago), jointly and severally, for appropriate punitive damages in an amount to be determined at trial;

(C)    Award costs, expenses, and reasonable attorneys' fees;

(D)    Grant such other and further relief as this Court deems equitable and just.

22

## CLAIM IX: ILLINOIS LOCAL GOVERNMENT AND LOCAL GOVERNMENT
## EMPLOYEES TORT IMMUNITY ACT
## (745 ILCS 10/9-102B)

113.    Plaintiff realleges and incorporates herein paragraphs 1 through 73 above.

114.    Claim IX of this Complaint is an Illinois statutory claim against Defendant City of

Chicago.  This Court has jurisdiction of this claim under 28 U.S.C. § 1367.

115.    Defendant City of Chicago is the employer of each of the Individual Defendants.

116.    Each of the Individual Defendants committed the acts and omissions alleged above

under color of state law and in the scope of their employment as employees of the City of Chicago.

WHEREFORE, should any of the Individual Defendants be found liable on one or more of

the claims set forth above, Plaintiff prays that, pursuant to 745 ILCS 10/9-102B, the Defendant City

of Chicago be found liable for any judgment Plaintiff obtains thereon against said defendants, as well

as for all attorneys' fees and costs awarded.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL CLAIMS.

Respectfully submitted,

One of Plaintiff's Attorneys

Date: April 12, 2004

Craig B. Futterman
Karen Soares, Senior Law Student*
EDWIN F. MANDEL LEGAL AID CLINIC
University of Chicago Law School
6020 S. University
Chicago, Illinois 60637
(773) 702-9611

*Deborah Pugh, a second year law student at the University of Chicago, assisted in the preparation of
this Complaint.

23

AO88 (Rev. 1/94) Subpoena in a Civil Case

**EXHIBIT**

B

**Issued by the**

# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF ILLINOIS

Diane Bond, Plaintiff

**SUBPOENA IN A CIVIL CASE**

V.

Edwin Utreras, et al., Defendants

Case Number:¹ 04 C 2617

TO:

Elizabeth Silas, Attorney, Chicago Housing Authority
200 West Adams, Suite 2100, Chicago, IL 60606

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attached Rider.

| PLACE | DATE AND TIME |
|---|---|
| Edwin F. Mandel Legal Aid Clinic, 6020 S. University, Chicago, IL 60637 | 9:30 a.m., February 21, 2005 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR | DATE |
|---|---|
| _[signature]_ Attorney for Plaintiff | February 3, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Craig B. Futterman, EDWIN F. MANDEL LEGAL AID CLINIC, 6020 S. University, Chicago, IL 60637
773-702-9611

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |  |
|---|---|---|---|
| SERVED | Anibal Espinola | Paralegal | 2-3-05 |

SERVED ON (PRINT NAME)

MANNER OF SERVICE

By hand

SERVED BY (PRINT NAME)

Elizabeth Miller

TITLE

Docket Clerk

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 2-3-05
DATE

SIGNATURE OF SERVER

6020 S. _____ Chicago IL 60637
ADDRESS OF SERVER

---

### Rule 45, Federal Rules of Civil Procedure, Parts C & D

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of

clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, of commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## ATTACHMENT RIDER

A copy of any and all records relating to ANDREW SCHOEFF (Caucasian male, 35 years old, employee of the Chicago Housing Authority Police Department from 1994– 1997) and JOSEPH SEINITZ (Caucasian male, 38 years old, employee of the Chicago Housing Authority Police Department from 1994–1997).

Records should include, but not be limited to:

1. The entire personnel files of Schoeff and Seinitz;

2. Any and all documents included in and/or compromising the job applications of Schoeff and Seinitz for their jobs in the Chicago Housing Authority Police Department;

3. Any and all documents related to Schoeff's and Seinitz's job history;

4. Any and all records providing information as to whether Schoeff or Seinitz have ever fired their guns while employed by the Chicago Housing Authority Police Department (excluding training and target practice);

5. Any and all documents related to instances in which Schoeff or Seinitz used force as a part of his job as a Chicago Housing Authority police officer;

6. Any and all records of any disciplinary complaints and investigations (including Summary Punishment), whether or not acted upon formally or informally, including the entire Complaint Register files, records indicating any sexual harassment caused by Schoeff or Seinitz, disciplinary histories and summaries for Schoeff and Seinitz at any time during his employment with the Chicago Housing Authority Police Department. For each such complaint, produce any and all documents relating to investigative and disciplinary recommendations, the review

of the investigator's recommendations, any administrative or judicial proceedings related to the complaint, and any official or unofficial action taken;

7.      Any and all records, notes, and documents created by those in supervisory positions over Schoeff and/or Seinitz relating to the review and monitoring of each of their performance, activities, or duties in their employment with the Chicago Housing Authority Police Department.

COMPLIANCE BY MAIL IS SUFFICIENT.

## CERTIFICATE OF SERVICE

I hereby certify that I have caused true and correct copies of the above and foregoing

**NOTICE OF MOTION** and **DEFENDANT OFFICERS' MOTION TO QUASH**

**PLAINTIFF'S SUBPOENA FOR DEFENDANT OFFICERS' PRIOR EMPLOYMENT**

**RECORDS**, to be personally delivered to the persons named in the foregoing Notice at the

addresses therein shown, on February 17, 2005.

Susan E. Sullivan
Assistant Corporation Counsel