IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| DIANE BOND, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | No. 04 C 2617 |
| v. | ) | |
| | ) | Judge Joan Humphrey Lefkow |
| CHICAGO POLICE OFFICERS EDWIN | ) | |
| UTRERAS (Star No. 19901), et al. | ) | Magistrate Judge Keys |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S MOTION TO COMPEL INTERROGATORY RESPONSES AND DOCUMENT PRODUCTION FROM DEFENDANT CITY OF CHICAGO

Plaintiff, by and through her counsel, respectfully requests, pursuant to Rule 37 of the Federal Rules of Civil Procedure, that this Court order Defendants to answer interrogatories and produce documents, as requested in Interrogatory Nos. 3(A-C, E), 7(G-H), 10 and 13-16 of Plaintiff's First Set of Interrogatories to the City of Chicago, served on October 8, 2004, Document Request Nos. 9-12, 14-17, 20-26, 29-34, 42(G-H), 48(G-H), 51(A-C, E), 53, 61 and 69-72, of Plaintiff's First Set of Document Requests to the City of Chicago, served on October 8, 2004, and Document Request Nos. 4, 15, 16 and 29-35 of Plaintiff's Second Set of Document Requests to the City of Chicago, served on August 24, 2005.

In support of these requests, Plaintiff respectfully submits as follows:

### Introduction

1. This case alleges that the City of Chicago maintains a policy, practice and custom of failing to properly supervise, monitor, discipline, counsel and otherwise control its police officers. As a result of this policy, a group of Chicago Police Officers – named here as the

Defendant Officers Christ Savickas, Andrew Schoeff, Joseph Seinitz, Robert Stegmiller, and Edwin Utreras – engaged in a years-long pattern of abuse in public housing communities on the South Side of Chicago, unchecked by the Chicago Police Department, or the City of Chicago.

2.      As part of this pattern of abuse, the Defendant Officers committed multiple acts of sexual, physical, and psychological abuse against the Plaintiff, Ms. Bond, on at least five occasions between April 2003 and March 2004.  Ms. Bond – a 50-year-old African-American woman – alleges that the Defendant Officers targeted her for abuse because of her race and her gender, and because the Defendant Officers knew that neither the Chicago Police Department nor the City of Chicago would impose any adverse consequences on the Defendant Officers for their repeated abuse, even if Ms. Bond were to report their conduct.

3.      The City of Chicago, as well as the Defendant Officers, have denied these allegations.  Specifically, the Defendant Officers deny any contact with Ms. Bond, and have asserted that they were not at Stateway Gardens (the public housing complex where Ms. Bond lives) on the times in question.  The City of Chicago has denied that it maintains a policy, practice or custom of failing to properly supervise, monitor, discipline, counsel or otherwise control its police officers.

4.      This motion seeks to compel substantive responses to numerous interrogatories and document requests, all but one of which have been outstanding since October 8, 2004.  Many of these requests seek documents that the City has admitted it intends to produce, but simply has not done so.

5.      The City's failures with regard to the discovery requested here reflect a pervasive strategy of delay, adopted by the City throughout this litigation, in an effort to shield its practices from judicial and public scrutiny.  At every turn, the City seeks to present one reason or another

2

why now is not the time for discovery into its woefully deficient and unconstitutional practices relating to the monitoring, supervising and disciplining of its police officers. Plaintiff respectfully submits that now, over a year after Plaintiff served her first discovery requests on the City, and six months after Plaintiff filed her Amended Complaint, the City should not be allowed to delay any longer.[1]

**Procedural History and Compliance with Local Rule 37.2**

5.       On October 8, 2004, Ms. Bond served the City of Chicago with  Plaintiff's First Request to Produce Documents to Defendant City of Chicago, and Plaintiff's First Set of Interrogatories to Defendant City of Chicago.

6.       The City did not respond to these requests until January 14, 2005.  In response to both Plaintiff's interrogatories and Plaintiff's document requests, the City noted various objections, but gave no substantive responses, other than "refer[ing] Plaintiff to documents Bates-stamped IDL 0001-0395" – a set of documents that the Defendant Officers produced in response to Plaintiff's discovery requests.  *See* Defendant City of Chicago's Answers to Plaintiff's First Set of Interrogatories (copy attached as Exhibit 1); Defendant City of Chicago's Responses to Plaintiff's First Set of Document Requests (copy attached as Exhibit 2).

7.       Throughout the winter and spring of 2005, the parties focused, at the request of Chief Judge Kocoras, on discovery confirming the identity of the Defendant Officers, before seeking to compel discovery from the City.  On April 7, 2005, following the completion of this identity-related discovery, Ms. Bond sought leave to file an amended complaint, dismissing

---

[1]  Plaintiff, by contrast, has sought diligently to comply with its discovery obligations. On July 26, 2005, Plaintiff produced to Defendants over a thousand pages of documents related to Plaintiff's *Monell* claims, organized generally by subject matter, and with a cover letter containing a brief description of each of the categories of documents produced.

certain named officers from the suit, and alleging additional claims against the City of Chicago under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).  *See* Plaintiff's Motion for Leave to File an Amended Complaint, Docket Entry No. 51.  On June 6, 2005, the Honorable Judge Lefkow granted Plaintiff's motion, over vigorous objections from the City.   Over six months later, neither the Defendant Officers, nor the City, has filed an answer to this Amended Complaint.

8.     On June 17, 2005, Plaintiff's counsel wrote to counsel for the City, noting Judge Lefkow's recent ruling, and demanding responses to each of the interrogatories and document requests referenced in the instant Motion.  *See* letter from D. Pugh to A. Park, dated June 17, 2005, attached to the instant Motion as a part of Exhibit 3.  Ms. Bond's counsel reiterated these demands in a letter dated July 29, 2005.  *See* letter from M. Mather to A. Park, dated July 29, 2005, attached to the instant Motion as Exhibit 3.

9.     On August 11, 2005, the City sent a letter to Plaintiff's counsel, submitting a partial response to these demands.  In this letter, the City essentially reiterated its previously-raised objections, and provided a mere 25 additional pages in discovery, alleged to be responsive to Interrogatory Nos. 10 and 17 and Document Request Nos. 12, 15, 30-34, 53, 61, 62, 69-72.

10.     On August 24, 2005, Plaintiff served her Second Set of Document Requests to Defendant City of Chicago.  This second set of requests included Document Request No. 15 ("Second Document Request No. 15") which sought the production of the "full name, star number, and unit of assignment of each officer who has received more than ten complaints in the last five years."  *See* Plaintiff's Second Set of Document Requests to Defendant City of Chicago, attached to the instant Motion as Exhibit 4.  This request essentially superseded Document Request No. 27, of Plaintiff's First Set of Document Requests, which sought the production of

4

the "full name, star number, and unit of assignment of each officer who has received more than twenty complaints in the last five years." *See* Exhibit 2 at Request No. 27.

11.     On October 26, 2005, counsel for Ms. Bond and counsel for the City held a conference call, in an attempt to resolve their differences regarding the outstanding discovery requests. During this call, counsel for the City indicated that it would check on certain items and provide further information to Plaintiff's counsel. *See* letter from M. Mather to A. Park, dated November 29, 2005, attached to the instant Motion as Exhibit 5. Specifically, counsel for the City stated that he would: (a) determine whether the statement provided in Bates No. 00046, that none of the Defendant Officers were ever "enrolled" in a behavioral intervention program, necessarily meant that none of the Defendant Officers were ever "referred" to such a program; (2) determine whether any documents existed (apart from Bates Nos. 00036-45) related to the Joint Operations Award, given in August 2002 to Defendant Officers Stegmiller and Savickas, and the Unit Meritorious Performance Award, given in June 2002 to Defendant Officers Schoeff, Utreras and Seinitz; (3) determine whether supervisor management logs existed for the Defendant Officers and their immediate supervisors for March 29, 2004, and March 30, 2004, and whether daily activity reports existed for the Defendant Officers and their immediate supervisors for April 13, 2003, April 28, 2003, April 30, 2003, March 29, 2004 and March 30, 2004; and (4) produce additional documents responsive to Document Request Nos. 30-34, 61-62, 69-72, although counsel for the City could identify no time frame as to when Plaintiff's counsel might expect to see these additional responses.

12.     With regard to the supervisor management logs and daily activity reports, counsel for the City was well aware that Plaintiff had requested much of this information by letter, dated July 12, 2004, almost three months before Plaintiff served her first set of discovery requests on

the City on October 8, 2004. *See* July 12, 2004 letter from C. Futterman to A. Park, attached as Exhibit 5 to Plaintiff's Motion for Sanctions, filed March 23, 2005. Following this July 2004 letter, counsel for the City had stated to Plaintiff's counsel that the City had requested the responsive documents from the City's Office of Legal Affairs, and would produce these documents to Plaintiff. *See* March 15, 2005 letter from C. Futterman to A. Park, attached as Exhibit 4 to Plaintiff's Motion for Sanctions, filed March 23, 2005.

13.     At the time that counsel for all parties held their joint discovery conference on November 22, 2005, counsel for the City had yet to notify Plaintiff's counsel as to any of the matters discussed in the October 26th conference call. *See* Exhibit 5. At this joint discovery conference, counsel for Ms. Bond informed counsel for the City that these issues would be included in a motion to compel, to be filed on or about December 12, 2005, unless further production from the City was forthcoming. *Id.*

14.     As of the date of filing of the instant motion, Ms. Bond's counsel has received no additional information from the City regarding the matters noted above.

## Argument

### I.     This Court should order the City to produce those documents that the City has stated it intends to produce.

The City has indicated that it intends to provide documents responsive to Document Request Nos. 30-34, 61, 69-72, but has refused to provide a date by which it will provide the responsive documents. These requests generally call for a mixture of both policy-related documents, and documents in the City's possession related specifically to the Defendant Officers. *See generally* Exhibit 2, at Request Nos. 30-34, 61, 69-72.

6

Counsel for the City has acknowledged that the City intends to produce additional documents responsive to these requests. Despite the fact that these requests have been outstanding since October 2004, the City has refused to provide even an estimate as to when it would be able to provide documents responsive to these requests. Accordingly, Plaintiff requests that this Court order the immediate production of documents responsive to these requests.

In addition, through the process of attempting to reach agreement on various discovery issues, counsel for the City has indicated to counsel for Plaintiff that the City would do the following:

- Confirm whether the statement provided in Bates No. 00046, that none of the Defendant Officers were ever "enrolled" in a behavioral intervention program, necessarily means that none of the Defendant Officers were ever "referred" to such a program.[2] (Interrogatory No. 10 and Document Request No. 12);

- Produce documents relating to the Joint Operations Award, given in August 2002 to Defendant Officers Stegmiller and Savickas, and the Unit Meritorious Performance Award, given in June 2002 to Defendant Officers Schoeff, Utreras and Seinitz, if such documents exist (Document Request No. 15);

- Produce all supervisor management logs for the Defendant Officers and their immediate supervisors for March 29, 2004, and March 30, 2004, and all daily activity reports for the Defendant Officers and their immediate supervisors for April 13, 2003,

---

[2] The distinction between "referral" and "enrollment" is articulated in the City's own documents, produced in discovery. Specifically, General Order 83-3 and General Order 97-11, produced by the City as Bates Nos. 00047-61, state that certain police personnel may make referrals or "recommendations" that an officer be placed into a behavioral intervention program, but that the final authority regarding who will be entered into these programs rests with the Director of the Personnel Division. The discovery request at issue specifically called for information regarding whether any of the Defendant Officers had ever been "referred to one of the City's behavioral intervention programs." (Interrogatory No. 10 and Document Request No. 12). Under these circumstances, Plaintiff is entitled to know whether the document that the City provided (Bates No. 00046) provides an adequate response to these requests.

April 28, 2003, April 30, 2003, March 29, 2004 and March 30, 2004, or confirm in writing that such documents no longer exist. (Document Request Nos. 1, 40, 45).[3]

Counsel for the City made these assurances to Plaintiff's counsel on October 26, 2005. There should be no dispute that these are relevant, discoverable documents, called for by discovery requests served in October 2004. *See, e.g.,* Exhibit 4 to Plaintiff's Motion for Sanctions, filed March 23, 2005 (noting that counsel for the City had agreed at one point to produce documents related to the whereabouts of certain officers on certain dates). The continued failure of the City to produce these documents has caused, and will cause, serious delay as Plaintiff attempts to complete fact discovery by April 18, 2006.

Because counsel for Plaintiff has no indication as to when counsel for the City intends to produce this material, Plaintiff respectfully requests that this Court compel the City to produce the information requested.[4]

## II.   This Court should order the City to produce the following documents specific to the Defendant Officers.

This Court should order the City to produce certain documents specific to the Defendant Officers. These requests fall into two basic categories: (1) documents related to establishing the Defendant Officers' pattern of abuse and lack of credibility; and (2) documents related to refuting the Defendant Officers' alleged misidentification and/or alibi defense.

---

[3] In his August 11, 2005, letter, counsel for the City stated to Plaintiff's counsel that supervisor management logs for 2003 did not exist. Plaintiff accepts that statement, but is entitled to know whether the same is true for the supervisor management logs requested from 2004, and the daily activity reports requested from 2003 and 2004. As noted above, counsel for the City had promised, at some point in the summer of 2004, to produce documents related to these requested dates. *See* Exhibit 4 to Plaintiff's Motion for Sanctions, filed March 23, 2005.

[4] With regard to Document Request No. 34, Plaintiff only seeks the production of documents created by those in supervisory positions over the Defendant Officers that are of an evaluative nature.

Specifically, Ms. Bond has requested that the City produce performance reviews for the Defendant Officers (Document Request No. 14), reports of firing a weapon related to the Defendant Officers (Document Request No. 16), use of force reports for each of the Defendant Officers (Document Request No. 17), and documents related to any incident in which the Defendant Officers testified at a criminal suppression hearing (or similar hearing), and the fact-finder held that the evidence at issue should be suppressed, or granted similar relief (Document Request No. 53). Through Document Request Nos. 42, 48 and 51, Ms. Bond also sought information related to which police officers were assigned certain vehicles on April 7, 2004 and May 3, 2004. These documents relate to the Defendant Officers misidentification and/or alibi defense, because the Defendant Officers were observed at Stateway Gardens (Ms. Bond's housing complex) in or around particular cars, on those dates.

The City objects to these requests as "overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence." Defendant City of Chicago Responses. These objections are without merit. Each of these requests call for information "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Plaintiff's request for performance reviews for the Defendant Officers relates directly to Ms. Bond's claim that the Defendant Officers engaged in a pattern of abuse, and that the City failed to supervise, discipline or otherwise control these officers. *See Vodak v. City of Chicago*, 2004 WL 1381043, *5 (N.D. Ill. 2004) (Nolan, Magistrate J.) ("Numerous courts have held that the personnel files and complaint histories of defendant officers are relevant in § 1983 actions involving police misconduct, particularly where, as here, plaintiffs allege a *Monell* policy, practice and custom claim against the municipality.") (collecting cases) (a copy of this unpublished opinion is attached as Exhibit 6). Plaintiff's requests for weapons reports and use of

force reports similarly relate to Ms. Bond's allegations regarding the Defendant Officers' pattern of abuse. In addition, Ms. Bond has alleged that the Defendant Officers used their weapons to threaten her, and used unreasonable force against her.

Moreover, the City cannot dispute that it does keep records of officer performance reviews, and that it does require its officers to file written reports documenting when they fire their duty weapon, or use force in fulfilling their duties as a police officer. These documents do exist, and compelling the City to produce them will cause no undue burden.

With regard to Document Request No. 53, seeking documents related to the Defendant Officers' testimony at criminal suppression hearings, where evidence was in fact suppressed, the City again asserts that producing this information would be "unduly burdensome," and "harassing." *See* Exhibit 2, at Response No. 53. These are instances in which a court has expressly found that certain of the Defendant Officers violated a citizen's constitutional rights. To whatever extent the City does not keep documents or information readily responsive to this request, Plaintiff has offered to accept the City's statement to that effect, in writing. Counsel for the City has indicated that he will not provide any such statement.

The City should be ordered to produce these documents, or confirm in writing that it does not track this information.

III.    **This Court should order the City to provide basic statistical and background information regarding the investigation and disposition of complaints filed against Chicago Police Officers, as well as the Use of Force Committee.**

Ms. Bond has requested, again since October 8, 2004, that the City provide basic statistical and background information regarding the investigation and disposition of complaints filed against Chicago Police Officers (Interrogatory No. 13, Document Request Nos. 20-26, and Second Document Request Nos. 4 and 15), including information specific to the Defendant

Officers' unit of assignment (Second Document Request Nos. 16, 29-35), as well as information concerning the Use of Force Committee (Interrogatory No. 16 and First Document Request No. 29). Ms. Bond has also requested that the City provide information relating to her allegations of a "code of silence" among Chicago Police Officers (Interrogatory No. 15).

The City has objected to these requests as "overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence." These objections are without merit.

With regard to Interrogatory No. 13 and Document Request Nos. 20-26, these requests ask that the City state in writing (or produce documents sufficient to show), for each of the years 1999 through 2004, the number of complaints filed against Chicago police officers in the following categories: excessive force, illegal search, strip search, sexual abuse or harassment, racial abuse or discrimination, illegal or false arrest, and police misconduct. For each of these categories, Plaintiff asks that the City state the number and percentages of complaints that were sustained, and the number of complaints that resulted in the imposition of a disciplinary sanction of a suspension for longer than a week or termination. Similar information is called for by Plaintiff's Second Document Request Nos. 16, 29-35, which asks for the same categories of information, but specific to the Public Housing South Unit. This information relates directly to Plaintiffs' claim that the City's disciplinary practices are deficient and ineffective. To whatever extent the City does not keep documents or information responsive to any portion of these requests, Plaintiff has offered to accept the City's statement to that effect. Counsel for the City has refused to provide any such statement.

Plaintiff's Second Document Request No. 4 asks that the City provide information on the number of excessive force complaints referred to the Cook County State's Attorney's Office for

11

possible criminal prosecution. This information relates directly to Plaintiff's claim that the City fails to adequately supervise, monitor and discipline its officers, in part by failing to treat police abuse as a crime.

Plaintiff's Second Document Request No. 15 asks that the City state in writing (or produce documents sufficient to show) the full name and star number of each officer who has received more than 10 complaints in the last five years, and, for each and every officer with more than 10 complaints, the disciplinary measures that were taken in response to the complaints against the officer. This information relates directly to Plaintiff's claim that the City has no effective early warning system, or monitoring system, and no effective disciplinary system that will deter or punish officers who commit acts of abuse. Again, to whatever extent the City does not keep documents or information responsive to these requests, Plaintiff has offered to accept the City's statement to that effect. Counsel for the City has refused to provide any such statement.

Plaintiff's Interrogatory No. 16 and Document Request No. 29 request documents related to the Chicago Police Department's Use of Force Committee – particularly what, if anything, the committee has done to attempt to prevent and/or punish the unreasonable use of force by Chicago police officers. This information relates directly to Ms. Bond's claim that the City has failed to adequately monitor or discipline its officers' unreasonable use of force, which in turn allowed the Defendant Officers to abuse Ms. Bond with impunity.

Interrogatory No. 15 asks the City to state in writing: "[f]or each instance during the years 1999 through 2004, in which a Chicago Police Officer made a statement in an internal investigation or a civil or criminal law suit or legal proceeding, which affirmed the misconduct of another Chicago Police Officer, . . . (a) the full name, star number, and unit of assignment of

12

the officer who made the statement; (b) the date and form of the statement; (c) the full name, star number, and unit of assignment of each accused officer who was the subject of the misconduct complaint; (d) the Complaint Register Number; (e) the case caption, case number, court, and name of judge; (f) the Subject Matter of the Complaint; and (g) the substance of the statement." This information relates directly to Ms. Bond's claim that a code of silence exists within the Chicago Police Department, and that as a result of this code, Chicago police officers do not report or affirm any misconduct alleged against a fellow officer.  *See* Amended Complaint at ¶¶ 82-83.  To whatever extent the City does not keep documents or information responsive to this request, counsel for Plaintiff has offered to accept the City's representation to that effect in writing.  Counsel for the City has stated that it will not provide such a representation.

WHEREFORE, Plaintiff respectfully requests that this Court order Defendants to respond fully to Interrogatory Nos. 3(A-C, E), 7(G-H), 10 and 13-16 of Plaintiff's First Set of Interrogatories to the City of Chicago, Document Request Nos. 9-12, 14-17, 20-26, 29-34, 42(G-H), 48(G-H), 51(A-C, E), 53, 61, 69-72, of Plaintiff's First Set of Document Requests to the City of Chicago, and Document Request No. 4, 15, 16, 29-35 of Plaintiff's Second Set of Document Requests to the City of Chicago, served on August 24, 2005.

Respectfully submitted,


/s/ H. Melissa Mather_____
One of Plaintiff's Attorneys

13

Date: December 12, 2005

Craig B. Futterman
H. Melissa Mather
EDWIN F. MANDEL LEGAL AID CLINIC
University of Chicago Law School
6020 S. University
Chicago, Illinois 60637
(773) 702-9611

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that she caused the foregoing document to be served on counsel for Defendants, who are "Filing Users" pursuant to ECF, on Monday, December 12, 2005, in accordance with the rules on electronic filing of documents.


/s/ H. Melissa Mather_____
H. Melissa Mather