IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| DIANE BOND, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHICAGO POLICE OFFICERS EDWIN | ) | |
| UTRERAS (Star No. 19901), et al., | ) | No. 04 C 2617 |
| | ) | |
| Defendants. | ) | Judge Joan Humphrey Lefkow |
| | ) | |
| | ) | Magistrate Judge Ashman |
| | ) | |
| | ) | |

**PLAINTIFF'S SECOND REQUEST TO PRODUCE
DOCUMENTS TO DEFENDANT CITY OF CHICAGO**

Plaintiff, by and through her attorney, Craig B. Futterman, and pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby requests that the Defendant City of Chicago, produce the following documents, objects, and tangible things within thirty days upon receipt of this request at the office of Craig B. Futterman, Edwin F. Mandel Legal Aid Clinic, 6020 South University, Chicago, IL 60637.

**DEFINITIONS AND INSTRUCTIONS**

Plaintiff adopts the Definitions and Instructions recited in Plaintiff's First Request to Produce Documents to Defendant City of Chicago. If any of the requested documents do not exist, please confirm this fact in writing.

## DOCUMENTS TO BE PRODUCED

1. Any notice or paper commonly given to victims of crime, or that Chicago police officers are trained to give to victims of crime, including but not limited to a "victim information notice."

2. Any and all documents reflecting complaints made by or concerning Frank Laverty, including but not limited to documents relating to the disciplining or transferring of Frank Laverty and the reason (or reasons) for that action, and the resolution of any complaints made by or concerning Frank Laverty.

3. Any and all general orders, special orders, department notices, handbooks, rules, regulations, form sets, and other Chicago Police Department rules, policies, procedures, or practices that relate to the following topics:

    a. referrals of citizen complaints alleging the use of excessive force by Chicago police officers to the Cook County State's Attorney's Office for possible criminal prosecution;

    b. the distribution of materials described in Request No. 1 by the Chicago Police Department's Office of Professional Standards;

    c. any protections offered by the Chicago Police Department to Chicago police officers who report having observed police misconduct;

    d. tactical teams, including but not limited to the process of selecting officers for participation or inclusion in tactical teams, and monitoring the performance of members of tactical teams;

    e. any systems in place from 1988 through 1996 for identifying Chicago police officers who were or may have been in need of behavioral intervention, including

      but not limited to the Behavioral Alert Program, and the Personnel Concerns Program. This request will include General Order 83-3, which is also specifically listed in Request No. 22, *infra*;

    f. any systems in place from 1999 through 2004 for tracking the number of arrests made by individual officers for the following crimes: resisting arrest, obstruction of justice, resisting or obstructing a peace officer, and battery of a peace officer.

4. Any and all documents reflecting the number of referrals of excessive force complaints to the Cook County State's Attorney's Office for possible criminal prosecution from 1999 through 2004.

5. Any and all documents, including transcripts, letters, e-mail, and resolutions, generated by any party during police contract negotiations relating to any contract provisions addressing whether or not Chicago police officers may be rewarded in any way for reporting the misconduct of other Chicago police officers.

6. Any and all documents related to reports of police misconduct dated 1999 through 2004, in which a Chicago police officer reports having observed a fellow Chicago police officer using excessive force, performing an illegal search, or engaging in any mistreatment of civilians.

7. Any and all performance evaluations (dated from 1999 through 2004) of Chicago police officers assigned to the Public Housing South Unit that reflect any consideration of the number or content of any Complaint Registers lodged against the Chicago police officer whose performance is being 2eviewed.

8. All documents produced pursuant to 65 ILCS 5/10-1-18.1 which reflect the status of investigations of allegations of unreasonable force from 1999 to 2004, including but not

limited to the Chicago Police Department Status Reports of Investigations of Allegations of Unreasonable Force.

9. Any and all Chicago Police Board publications related to disciplining Chicago police officers and/or the response of the Chicago Police Board to complaints against police officers from 1999 to 2004.

10. Chicago Police Board annual, biannual, or similar reports from 2003-2004.

11. The Chicago Police Department's Annual Reports related to Internal Affairs Division Investigations, Excessive Force Complaints, and Recommended Disciplinary Actions in Sustained Cases for the years 1999-2000 (2000 Annual Report), 2002-2003 (2003 Annual Report), and 2003-2004 (2004 Annual Report).

12. All Chicago Police Board reports, dated 1999 through 2004, related to disciplinary actions taken by the Police Board, including but not limited to Disciplinary Actions Taken by the Police Board from January 1999-May 2003 and July 2003-December 2004.

13. Any and all written policies, procedures, and manuals related to monitoring of police activity by the Chicago City Council, including the Police and Fire Committee of the City Council.

14. Department Directive 00-35, relating to the performance rating process for sworn members for the rating period January 1, 2000 through June 30, 2000.

15. Any and all documents providing information as to the full name and star number of each Chicago police officer who has received more than ten complaints in the last five years, and, for each and every Chicago police officer with more than ten complaints, the unit that Chicago police officer was assigned to at the time of the misconduct alleged in the

complaint, and the disciplinary measures that were taken in response to the complaint or complaints.

16. Any and all documents reflecting the number of Complaint Registers that have been sustained against Chicago police officers in the Public Housing South Unit, from 1999 through 2004, and what percentage of Complaint Registers made against Chicago police officers in the Public Housing South Unit, from 1999 through 2004, were sustained.

17. Any and all documents reflecting the number of Complaint Registers that have been sustained against Chicago police officers from 1999 through 2004, and what percentage of Complaint Registers made against Chicago police officers, from 1999 to 2004, were sustained.

18. Any and all documents reflecting the number of Chicago police officers assigned to the Public Housing South Unit who have been referred to the following programs at any time from 1999 through 2004: Behavioral Intervention System, Personnel Concerns Program, or Early Intervention/counseling.

19. Any and all documents describing the contents of computerized databases, computer programs or information systems used by the Chicago Police Department from 2000 to the present to track or detect crime, including but not limited to Compstat and the Citizen and Law Enforcement Analysis and Reporting ("CLEAR") program, including but not limited to any and all documents detailing what input fields are used in such databases, programs or systems, and how those input fields are used to detect patterns of crime.

20. Any and all documents describing the contents of computerized databases, computer programs, or information systems used by the Chicago Police Department from 2000 to the present to track or detect police officer performance and/or problematic police

behavior, including but not limited to any and all documents detailing what input fields are used in such databases, programs or systems, and how those input fields are used to detect patterns of police performance and/or problematic police behavior.

21. Any and all documents reflecting the number of officers referred to the following programs from 1999 through 2004, and the reasons for any such referrals:

    a. Behavioral Intervention System;

    b. Behavioral Alert System;

    c. Personnel Concerns Program;

    d. Early Intervention/Counseling.

22. All documents describing the "established retention schedule" for "unit-level documents and Counseling Records," as referred to in the "note" following Paragraph C on Bates No. 00050, produced by the City on or about August 11, 2005. In responding to this request, produce all documents reflecting this "retention schedule" as it was in place from 1997 through the present, including any changes to the "retention schedule" made during that time.

23. Any and all documents referred to in Bates Nos. 00047-00061, produced by the City on or about August 11, 2005, specifically:

    a. Behavioral Alert System Counseling Record, CPD-11.665 (11/89);

    b. Behavioral Intervention System Counseling Record, CPD-11.665;

    c. Individualized Performance Plan (IPP), CPD-62.217 (11/97);

    d. Counseling Session Report (CPD-11.666);

    e. Personnel Concerns Progress Report (CPD-62.366);

    f. General Order 83-3 (rescinded);

  g. All "related directives" listed on Bates No. 00056, specifically, the General Order titled "Behavioral Intervention System, Complaint and Disciplinary Procedures," the General Order titled "Summary Punishment," the General Order titled "Social Service Assistance and Referral Program," and the Department Notice titled, "Performance Ratings."

In responding to this request, produce all documents reflecting any changes to the forms listed above, from 1994 through the present.

24. Any and all documents reflecting the manner in which the Office of Professional Standards and/or the Internal Affairs Division "regularly review disciplinary records to identify those members who display a pattern of behavior that may require a recommendation to the Personnel Division Director for placement into the BIS," as stated in Bates No. 00051, produced by the City on or about August 11, 2005.

25. Any and all documents reflecting any procedures, practices or guidelines followed by the Assistant Deputy Superintendent, Internal Affairs Division, and the Administrator of the Office of Professional Standards in "review[ing] incoming and current complaint register cases to determine if the behavior of any accused Department member fits the criteria for inclusion in the Personnel Concerns Program," as stated in Bates No. 00061, produced by the City on or about August 11, 2005.

26. Any and all documents reflecting any procedures, practices or guidelines followed by command and supervisory members in "monitoring the performance of their subordinates," as stated in Bates No. 00048, in identifying "Department members who may be exhibiting certain behavioral intervention indicators to be placed in the

[Behavioral Intervention System]," as stated in Bates No. 00052, in identifying members "experiencing performance problems," as stated in Bates No. 00053.

27. Any and all documents reflecting any procedures, practices or guidelines followed by watch supervisors in "monitor[ing] the performance of all employees," as stated in Bates No. 00058, or followed by exempt commanding officers in "recommend[ing] to the Director, Personnel Division that a member be placed in the Personnel Concerns Program," as stated in Bates. No. 00060.

28. Any and all documents reflecting any procedures, practices or guidelines followed by watch commanders in "gather[ing] and review[ing] all pertinent, recorded documentation," as stated in Bates. No. 00059, and "review[ing] all relevant unit records concerning the member's past work performance and disciplinary history," as stated in Bates No. 00053.

29. For each of the years 1999 through 2004, any and all documents containing information related to the number of excessive force complaints filed against Chicago police officers assigned to the Public Housing South Unit, the number and percentages of excessive force complaints that were sustained, and the number of excessive force complaints that resulted in the imposition of a disciplinary sanction of a suspension for longer than a week or termination.

30. For each of the years 1999 through 2004, any and all documents containing information related to the number of illegal search complaints filed against Chicago police officers assigned to the Public Housing South Unit, the number and percentages of illegal search complaints that were sustained, and the number of illegal search complaints that resulted

in the imposition of a disciplinary sanction of a suspension for longer than a week or termination.

31. For each of the years 1999 through 2004, any and all documents containing information related to the number of strip search complaints filed against Chicago police officers assigned to the Public Housing South Unit, the number and percentages of strip search complaints that were sustained, and the number of strip search complaints that resulted in the imposition of a disciplinary sanction of a suspension for longer than a week or termination.

32. For each of the years 1999 through 2004, any and all documents containing information related to the number of sexual abuse or harassment complaints filed against Chicago police officers assigned to the Public Housing South Unit, the number and percentages of sexual abuse or harassment complaints that were sustained, and the number of sexual abuse or harassment complaints that resulted in the imposition of a disciplinary sanction of a suspension for longer than a week or termination.

33. For each of the years 1999 through 2004, any and all documents containing information related to the number of racial abuse or discrimination complaints filed against Chicago police officers assigned to the Public Housing South Unit, the number and percentages of racial abuse or discrimination complaints that were sustained, and the number of racial discrimination complaints that resulted in the imposition of a disciplinary sanction of a suspension for longer than a week or termination.

34. For each of the years 1999 through 2004, any and all documents containing information related to the number of illegal or false arrest complaints filed against Chicago police officers assigned to the Public Housing South Unit, the number and percentages of illegal

or false arrest complaints that were sustained, and the number of illegal or false arrest complaints that resulted in the imposition of a disciplinary sanction of a suspension for longer than a week or termination.

35. For each of the years 1999 through 2004, any and all documents containing information related to the number of police misconduct complaints filed against Chicago police officers assigned to the Public Housing South Unit, the number and percentages of police misconduct complaints that were sustained, and the number of police misconduct complaints that resulted in the imposition of a disciplinary sanction of a suspension for longer than a week or termination.

36. Any and all documents reflecting the total amount of money allocated to the Chicago Police Department's Office of Professional Standards on an annual basis from 1995 through the present, and, for each of the years 1995 through the present, what percentage of the total annual Chicago Police Department budget is represented by the money allocated to the Office of Professional Standards.

37. Any and all documents reflecting details of the annual operating budget of the Chicago Police Department's Office of Professional Standards from 1995 through the present, including the source of any funds allocated to the Office of Professional Standards, and the manner in which such funds were spent.

38. Any and all documents reflecting the number of full-time investigators employed by the Office of Professional Standards from 1995 to the present.

39. Any and all documents reflecting the cost of implementing the Citizen and Law Enforcement Analysis and Reporting ("CLEAR") system, including but not limited to the costs of purchasing any computer software or computer hardware necessary to run the

program, installing any such software or hardware, providing technical support required to keep any such software or hardware functioning appropriately, and training employees on how to use the system.

40. Any and all documents reflecting the cost of implementing the Compstat system, including but not limited to the costs of purchasing any computer software or computer hardware necessary to run the program, installing any such software or hardware, providing technical support required to keep any such software or hardware functioning appropriately, and training employees on how to use the system.

41. Any and all documents reflecting the Chicago Police Department's annual budget for the years 1995 through 2005 for the purchase, upgrade, or maintenance of computer hardware and software, including any funds allocated to training staff members in the use of computer hardware and software.

42. Any and all documents reflecting what portion of the Chicago Police Department's annual budget for the years 1995 through 2005 for the purchase, upgrade, or maintenance of computer hardware and software, including any funds allocated to training staff members in the use of computer hardware and software, was allocated to the Office of Professional Standards. Include in your response documents reflecting the dollar amounts allocated to the Office of Professional Standards for the purposes detailed above, for the years 1995 through 2005.

43. Any and all documents reflecting the amount of money allocated to the Public Housing Unit of the Chicago Police Department from 2000 through 2004, including the source of any such funds, and the manner in which such funds were spent. Include in your

11

response any documents reflecting the amount of money transferred from the Chicago Housing Authority to the Chicago Police Department from 2000 through 2004.

                                            Respectfully submitted,

                                            _____

                                            One of Plaintiff's Attorneys

Date: August 24, 2005December 12, 2005

Craig B. Futterman
H. Melissa Mather
EDWIN F. MANDEL LEGAL AID CLINIC
University of Chicago Law School
6020 S. University
Chicago, Illinois 60637
(773) 702-9611

Deborah Pugh, a 2005 graduate of the University of Chicago Law School, provided substantial assistance in the preparation of this document.

**CERTIFICATE OF SERVICE**

I, Melissa Mather, an attorney, hereby certify that on August 24, 2005, I caused a true and accurate copy of the foregoing PLAINTIFF'S SECOND REQUEST TO PRODUCE DOCUMENTS TO DEFENDANT CITY OF CHICAGO to be delivered via facsimile and first class mail upon counsel of record, listed below:

| | |
|---|---|
| Mr. Thomas Platt<br>Ms. Susan Sullivan<br>City of Chicago, Dept. of Law<br>30 N. LaSalle St., Room 1400<br>Chicago, Illinois 60602<br>Fax (312) 744-6566 | Mr. Arnold Park<br>City of Chicago, Dept. of Law<br>30 N. LaSalle St., Room 900<br>Chicago, Illinois 60602<br>Fax (312) 744-6912 |

_____
H. Melissa Mather