IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DIANE BOND,                          )
                                     )
            Plaintiff,               )      No. 04 C 2617
                                     )
      v.                             )      Judge Joan Humphrey Lefkow
                                     )
CHICAGO POLICE OFFICER EDWIN         )      Magistrate Judge Arlander Keys
UTRERAS, et al.,                     )
                                     )
            Defendants.              )

## MEMORANDUM OPINION AND ORDER

In April 2004, Diane Bond filed a civil rights action
against nine named Chicago Police Officers, alleging that, from
April 13, 2003 on, the officers essentially terrorized her in and
around her home in the last remaining building in the Stateway
Gardens public housing development on Chicago's South side.  In
June 2005, Ms. Bond filed an amended complaint, naming as
defendants just five of the nine officers named in the original
complaint, and adding as defendants the Chicago Police
Department's current and former superintendents, the former
administrator of the CPD's Office of Professional Standards, and
the City of Chicago.  In her amended complaint, Ms. Bond alleges
that the named officers sexually, physically and psychologically
abused and intimidated her in and around her home during the
period beginning April 13, 2003 and ending in March of 2004.  Ms.
Bond alleges that the officers committed such acts under color of
their authority as Chicago Police Officers, and that they were

motivated in their actions by gender and racial animus. Ms. Bond also alleges that the City of Chicago maintains a custom, policy and practice of failing to take steps to prevent the type of misconduct and abuse reflected in her allegations.

In December 2005, Judge Lefkow, the district judge to whom the case is assigned, referred the case to this Court to handle all discovery matters. The case is currently before the Court on defendants' motion to compel Jamie Kalven, a non-party, to answer certain deposition questions and on defendants' petition for the issuance of a rule to show cause and to compel Mr. Kalven to produce documents sought in a subpoena served on him by the defendants. Before turning to the merits, a bit of background on the case, and on Mr. Kalven's role in the case, is in order.

In her complaint, Ms. Bond alleges that, on April 13, 2003, she was harassed and abused by Officers Savickas, Utreras, Stegmiller and Schoeff, beginning with an encounter at about 5:00 p.m. outside her home in Stateway Gardens, a Chicago Housing Authority development. Ms. Bond alleges that Officer Savickas, without provocation, put a gun to her head and demanded to know where she lived; when she told him, the officers took her to her apartment and forced her inside. Once inside, the officers handcuffed Ms. Bond and proceeded to trash her home, under the guise of looking for drugs; they broke glasses and other personal property; they handcuffed and beat Ms. Bond's son, Willie Murphy,

2

who was home at the time, along with a friend of his, Demetrius Miller, who was also present; they shouted slurs at Ms. Bond; they kicked and slapped her; one officer took her into her bathroom and ordered her to "shake out" her bra, pull down her pants and underpants and shake them out as well, all while he was standing right in front of her; the officers brought another man into the apartment, who turned out to be Mike Fuller, and handcuffed and beat him in front of Ms. Bond and her son; and they ordered Ms. Bond's son and his friend to beat Mr. Fuller for their amusement. The police had no search warrant, and, in the end, they apparently found no drugs or other contraband in Ms. Bond's home.

To be sure, the events as alleged are abhorrent and shocking. Jamie Kalven is a journalist and the author and copyright holder of an article entitled "Kicking the Pigeon"; the article claims to detail the humiliation and abuse Ms. Bond and those near her suffered at the hands of the Chicago Police Officers on April 13, 2003. By all accounts, the article reflects only one side of the story - Ms. Bond's, though it does indicate that the officers alleged to have committed these horrific acts "deny having any contact with Ms. Bond on the date alleged." *See Kicking the Pigeon*, p. 3. The article itself states that the narrative of events contained therein is based on

> a series of interviews with Diane Bond, beginning on
> the day after the alleged incident, April 14, 2003, and

continuing to the present; interviews with Willie
Murphy, Demetrius Miller, and Michael Fuller; and the
plaintiff's statement of facts in *Bond v. Chicago
Police Officers Utreras, et al*, a federal civil rights
suit brought by Ms. Bond.

*Kicking The Pigeon*, p. 3.

In her pre-trial disclosures, Ms. Bond has indicated that

she intends to call Mr. Kalven as a witness for her case.  Mr.

Kalven's connection to this case is quite deep; in addition to

writing the article, Mr. Kalven is apparently embedded in the

Stateway Gardens building in which Ms. Bond resides, and he

appears to serve as a liaison of sorts for the residents of that

building and the Edwin F. Mandel Legal Aid Clinic at the

University of Chicago Law School, which represents Ms. Bond in

this case and which generally handles litigation for citizens who

claim to have been abused or victimized by the police.  In this

case, Mr. Kalven testified that, after speaking with Ms. Bond the

day after the alleged incident supposedly occurred, he talked to

Mr. Futterman at the clinic to ask him whether he thought Ms.

Bond had "a case."  *See* Deposition of Jamie Kalven, p. 23.

On April 12, 2005, the defendants took Mr. Kalven's

deposition.  During the course of that deposition, Mr. Kalven

refused to answer certain questions, including questions about

conversations he had with various people about Ms. Bond's case.

Shortly after the deposition, on June 13, 2005, Mr. Kalven was

served with a subpoena seeking:

copies of any and all documents, notes, reports,
writings, computer files, audio tapes, video tapes, or
any written or recorded item in your possession
regarding or relating to the following persons or
subjects:

Diane Bond, Willie Murphy, Mike Fuller, Demetrius
Miller, Robert Travis, Barbara White, Ben Harris,
Billie Johnson, Clyde Johnson, Dorothy Oliver, Gerri
Williams, Princess Streeter, Andre Williams, Vera
Miles, Severta Showers, Lorel A. Greene, Ph.D., Craig
Futterman, Officer Andrew Schoeff, Officer Christ
Savickas, Officer Joseph Seinitz, Officer Robert
Stegmiller, Officer Edwin Utreras, Officer Schmidt,
Officer Macintosh, and/or any allegations of misconduct
by any police officer at the Stateway Gardens in
Chicago, IL.

Rider to Subpoena directed to Jamie Kalven, issued June 10, 2005

(attached as Exhibit D to Defendants' Petition for the Issuance

of a Rule to Show Cause and to Compel Production of Any and All

Documents Sought in the Subpoena, hereinafter "Defendants'

Petition).

On June 24, 2005, Mr. Kalven wrote to defense counsel

objecting to the subpoena under Rules 45(c) and 26(c) of the

Federal Rules of Civil Procedure.  In particular, he argued that

the subpoena was subject to being quashed because it was

overbroad; it sought confidential research gathered in a

professional capacity; it sought information that was neither

relevant nor reasonably calculated to lead to the discovery of

admissible evidence; it subjected him to annoyance, undue burden

and expense, outweighing any potential relevance; it sought

privileged information; and it purported to treat him as an

unretained expert and sought to obtain information resulting from a study that he undertook for his own purposes and not at the request of any party. *See* June 24, 2005 Letter from Jamie Kalven to Susan Sullivan (attached as Exhibit E to Defendants' Petition).

On March 3, 2006, counsel for the defendants wrote to Mr. Kalven, representing that they had received a May 2, 2003 statement of Mike Fuller, but had otherwise received nothing in response to the subpoena. *See* March 13, 2006 Letter from Thomas Platt and Mary McDonald of the Corporation Counsel's Office to Jamie Kalven (attached as Exhibit F to Defendants' Petition). Mr. Kalven responded on March 29, 2006, with a letter indicating that, to the extent they had received notes on Mike Fuller, they had come from Ms. Bond's attorney and not from him; he also reiterated his intention to "stand on" the objections raised in his June 24, 2005 letter. *See* March 29, 2006 Letter from Jamie Kalven to Thomas Platt and Mary McDonald (attached as Exhibit E to Defendants' Petition).

On May 1, 2006, the defendants filed their motion to compel Mr. Kalven to answer certain deposition questions and their petition for the issuance of a rule to show cause and to compel production of any and all documents sought in the subpoena. The motions have now been fully briefed.

Discussion

Initially, although the present motions involve discovery sought from a journalist, the Court's resolution of the motions does not really implicate questions of privilege. The defendants contend that Mr. Kalven "may not simultaneously advocate Plaintiff's cause *and* claim to be a journalist by hiding behind a journalistic privilege." Reply Brief, p. 3. They also argue that Mr. Kalven has not properly objected to the subpoena request because he did not prepare and provide a privilege log. *See* Reply Brief, p. 3. But, as he makes clear in his sur-reply, Mr. Kalven is not relying on any claim of privilege - and wisely so; the Seventh Circuit has rejected the notion of a federal reporter's privilege, *see McKevitt v. Pallasch*, 339 F.3d 530, 533 (7th Cir. 2003). Rather, Mr. Kalven argues that the subpoena here is objectionable based upon Federal Rules of Civil Procedure 45(c) and 26.

In *McKevitt*, the court advised that, "rather than speaking of privilege, courts should simply make sure that a subpoena duces tecum directed to the media, like any other subpoena duces tecum, is reasonable in the circumstances, which is the general criterion for judicial review of subpoenas." 339 F.3d at 533 (citing Fed. R. Crim. P. 17(c); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002); *EEOC v. Sidley Austin Brown & Wood*, 315 F.3d 696, 700 (7th Cir. 2002)). Here, though the

7

subpoena is not directed at the media *per se*, it is directed at a non-party whose connection to this case turns, to some extent, on his role as a journalist. Admittedly, Mr. Kalven is not simply a member of the media here; he himself has admitted that, when it comes to the events alleged in the Bond case, he is less than objective, and he is, by all accounts, deeply connected to this case and to Ms. Bond and the other residents of Stateway Gardens. But he is still a non-party and he is still a journalist who interviewed the parties and witnesses involved in the case and who documented his research in a series of publications. The Court sees no reason why *McKevitt's* reasonableness standard should not apply.

The question of what is reasonable under the circumstances, of course, depends upon the particular circumstances. Here, Mr. Kalven is a non-party, which means that he is treated differently, entitled to "somewhat greater protection," than would a party be in these circumstances; here, mere relevance may not be enough to justify compelling the disclosures the defendants seek. *See Patterson v. Burge*, No. 03 C 4433, 2005 WL 43240, at *1 (N.D. Ill. Jan. 6, 2005). "Subpoenaed non-parties have the right to challenge the burdensomeness and expense of responding to the subpoena, pursuant to [Rule] 45(c)"; "[w]hether a subpoena imposes an 'undue burden' upon a witness is a case specific inquiry that turns on 'such factors as relevance, the

need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Builders Association of Greater Chicago v. City of Chicago*, No. 96 C 1122, 2001 WL 664453, at *8 (N.D. Ill. June 12, 2001)(quoting *American Electrical Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). Thus, to decide the defendants' motion, the Court must "balanc[e] the burden of compliance against the benefits of the requested production. *Patterson*, 2005 WL 43240, at *1 (citing *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004)).

Mr. Kalven has challenged the subpoena on two grounds primarily: he argues that the subpoena is overbroad, and he argues that compliance would place an undue burden on him as a journalist. As noted above, the defendants have requested

> copies of any and all documents, notes, reports, writings, computer files, audio tapes, video tapes, or any written or recorded item in your possession regarding or relating to the following persons or subjects:
>
> Diane Bond, Willie Murphy, Mike Fuller, Demetrius Miller, Robert Travis, Barbara White, Ben Harris, Billie Johnson, Clyde Johnson, Dorothy Oliver, Gerri Williams, Princess Streeter, Andre Williams, Vera Miles, Severta Showers, Lorel A. Greene, Ph.D., Craig Futterman, Officer Andrew Schoeff, Officer Christ Savickas, Officer Joseph Seinitz, Officer Robert Stegmiller, Officer Edwin Utreras, Officer Schmidt, Officer Macintosh, and/or any allegations of misconduct by any police officer at the Stateway Gardens in Chicago, IL.

Rider to Subpoena directed to Jamie Kalven, issued June 10, 2005 (attached as Exhibit D to Defendants' Petition). As worded, the subpoena would require Mr. Kalven to produce documents relating to 24 specifically identified people, some of whom may not have anything whatsoever to do with the allegations of Ms. Bond's complaint or with any issue in this case, plus an unknown universe of people who could potentially be covered by the catchall phrase at the end of the request. On this last point, the Court does not see how - and the defendants have not explained how - documents relating to other allegations and other officers is probative of anything in this case. And the subpoena itself is unlimited in terms of the time period to be covered, which the defendants have similarly failed to justify. In short, the Court agrees with Mr. Kalven that the subpoena is overbroad.

Mr. Kalven also argues that the subpoena is unreasonable because it places an undue burden on him as a journalist. Though clearly not free of bias here, Mr. Kalven is nonetheless a journalist and, according to his deposition testimony, his work at the Stateway Gardens development is ongoing. Given this, disclosure and production of his notes and his research materials would certainly harm Mr. Kalven's "street cred"; he fancies himself as being a voice of the people in the projects; if he is seen as being one who hands over people's stories to the Police - especially when those stories sometimes involve allegations that

10

the Police have been abusive - people might be less willing to come to him, and his journalistic endeavors, such as they are, would be undermined.

To be sure, Ms. Bond's allegations are extraordinary and, in some respects, seem almost incredible. But the Court is not so naive as to think that police officers are incapable of crossing the line, of engaging in seemingly incredible practices as a means to an end (an end that is sometimes even laudable, e.g., weeding out drug dealers). And a corollary of that is that, those who complain about police misconduct do so somewhat hesitantly for fear that their complaints will get nothing but further harassment and the exactment of some sort of retribution by the officers who engaged in the misconduct in the first place. Some of this burden would be ameliorated if the subpoena itself were not so broad; if it did not, for example, seek documents and information relating to any and all allegations of misconduct, not just those involved in this case, and if it did not, for example, seek documents and information relating to misconduct on the part of any and all officers, not just those alleged to be involved in this case.

Moreover, concerns about the burden imposed on Mr. Kalven might be counterbalanced if the defendants could establish that the evidence they seek is highly probative of issues relevant to the case. But they have not. They have not established that the

11

subpoena seeks information that they don't already have or that is otherwise unavailable to them. The defendants argue that the versions of events related by Mr. Fuller and Mr. Miller at their depositions are "markedly different" from the version contained in *Kicking the Pigeon*. And, if that were true, the Court might be persuaded that the defendants should be entitled to the notes, tapes and research materials upon which the article was based. But the examples of the discrepancies offered by the defendants do not support the "markedly different" characterization.

By way of example, the defendants argue that Mr. Fuller testified at his deposition that there were four to five officers in Ms. Bond's apartment on April 13, 2003, whereas, in *Kicking the Pigeon*, Mr. Kalven reports that Mr. Fuller told him there were four officers present. *See* Defendants' Reply Brief, p. 6. This is hardly a "marked" inconsistency.

It is understandable that the defendants would want to uncover possible areas of impeachment to discredit Ms. Bond and her witnesses. But, as the Court has noted, the "inconsistencies" identified so far are extremely nit-picky. And, more importantly, *Kicking the Pigeon*, which is published and available to the defendants, would seem to provide whatever fodder defendants might need to cross-examine or impeach the witnesses on these points. The defendants have not explained why, specifically, they need the interview notes or tapes – what

12

those might add to the mix, if anything.  They have not shown that the information contained in the notes is unavailable from another source.  They contend that Mr. Kalven's notes provide different accounts of the events than Mr. Fuller and Mr. Miller recounted in their depositions, but they do not explain how they know that to be true; if they are merely referring to the "marked inconsistencies" they cite, as explained, the Court is not persuaded that the accounts are indeed different.

Because the defendants have failed to establish that enforcing compliance with the subpoena will serve any real benefit, and because Mr. Kalven has established that compliance will unduly burden him, the Court will deny the defendants' petition regarding the subpoena.  Having said this, the Court cautions the plaintiff that, if it turns out she is attempting to use Mr. Kalven as an expert, whether or not he is formally disclosed as such, the defendants would then be entitled to whatever data or information Mr. Kalven considered in forming his opinions.  If he has documents, videotapes or other materials that would fall into this category, the defendants would be entitled to them, not because of the subpoena, but because Federal Rule of Civil Procedure 26(a)(2) requires it.

Lastly, with regard to the defendants' motion to compel Mr. Kalven to answer certain deposition questions, given the ruling above, the Court will not compel Mr. Kalven to discuss the

substance of any interviews he conducted with any resident of Stateway Gardens. The one exception is Ms. Bond; as the plaintiff, she can have no legitimate expectation that her discussions with Mr. Kalven would remain off the record. *See, e.g., Patterson*, 2005 WL 43240, at *4. And, indeed, Mr. Kalven freely shared those conversations when he took the case to Mr. Futterman in the first place, and he conceded at his deposition that any conversations he may have had with Ms. Bond would be subject to disclosure to the defendants as well. It is the Court's understanding that Mr. Kalven answered all questions posed regarding his conversations with Ms. Bond, and that he has turned over any notes or tapes documenting his conversations with her. But, to the extent that is not the case, the Court will order Mr. Kalven to answer those specific questions and to turn over those specific documents, to the extent they exist.

## Conclusion

For the reasons explained above, the Court denies the defendants' motion to compel responses to certain deposition questions [#136], and denies defendants' petition for the issuance of a rule to show cause and to compel production of any and all documents sought in the subpoena [#138], except to the extent those motions relate to questions and documents reflecting conversations Mr. Kalven had with Ms. Bond herself.

Dated: June 27, 2006

ENTER:

_Arlander Keys_
_____
ARLANDER KEYS
United States Magistrate Judge