IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANE BOND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 04 C 2617 |
| | ) |
| v. | ) Judge Joan Humphrey Lefkow |
| | ) |
| CHICAGO POLICE OFFICER | ) |
| EDWIN UTRERAS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Diane Bond ("Bond"), filed suit against five Chicago police officers ("the defendant officers"), the former chief administrator of the Office of Professional Standards, the present and former superintendent of the Chicago Police Department ("CPD"), and the City of Chicago ("the City") (collectively, "defendants"), alleging that the defendant officers subjected her to sexual, physical and psychological abuse pursuant to a police department policy, custom and practice under 42 U.S.C. § 1983. Shortly before trial, the parties reached a settlement. On March 23, 2007, the court entered an Agreed Order of Dismissal and dismissed the case with prejudice.

Pursuant to the parties' agreed motion, at the outset of the litigation this court entered a protective order, which allowed the parties to designate certain discovery material as confidential. The protective order defined "Confidential Matter" not to be disseminated to the public as, *inter alia*, "employment, disciplinary, investigatory ... or other information that is of a sensitive or non-public nature regarding plaintiff, defendants, non-party witnesses and non-party

employees of the City of Chicago that may be subject to discovery in this action." The protective order further provided, however, that "the designation of material as 'Confidential Matter' does not create any presumption for or against that treatment" and explicitly noted that this court would retain authority to potentially redesignate any material designated "confidential."

Prior to the parties' settlement, Bond requested and received extensive discovery documents, which included, *inter alia*, 1) a list of police officers during a specified time period against whom more than ten complaint register ("CR") files had been opened, identifying the officers by name and the CR files by number; 2) a list of those police officers identified in (1) who had been referred to CPD's early intervention programs; 3) a list of those officers identified in (1) who had been assigned to CPD's Public Housing South Unit; 4) the employee complaint histories of the defendant officers; 5) CR files against the defendant officers; and 6) CR investigative files initiated by complaints made by Bond.

On March 15, 2007, Jamie Kalven ("Kalven"), a self-described professional writer and journalist,[1] petitioned to intervene in this case[2] and moved the court to strike the confidential

---

[1] See. e.g., JAMIE KALVEN, WORKING WITH AVAILABLE LIGHT: A FAMILY'S WORLD AFTER VIOLENCE (W. W. Norton & Company, 1st ed., 1999); Jamie Kalven, *Healing Is a Matter of Small Acts of Attention and Care Sustained Over Time*, at http://www.slate.com/default.aspx?id=3944&qt=jamie+kalven; Jamie Kalven, *Kicking the Pigeon*, at http://www.viewfromtheground.com/wp-content/media/ktp/kicking_the_pigeon.pdf.

[2] "[I]ntervention is the procedurally appropriate course for third-party challenges to protective orders," with the press having "standing to challenge a protective order for abuse or impropriety." *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 896, 898 (7th Cir.1994). *See also Jessup v. Luther*, 227 F.3d 993, 997-98 (7th Cir. 2000) (discussing the press and general public's right to intervene to challenge confidentiality orders in the language of Rule 24, Fed. R. Civ. P). For that reason, and because defendants express no opposition to Kalven's intervention, concentrating instead solely on Kalven's motion to unseal the disputed documents, Kalven is given leave to intervene in this action for the limited purpose of challenging the protective order for abuse or impropriety.

designation of certain documents produced during discovery by defendants.[3] Kalven contends that 1) certain documents are improperly designated as "Confidential Matter" under the protective order;[4] and 2) in any event, now that the parties have settled, good cause no longer exists to keep any of the disputed records confidential.

In response, defendants argue that public access to the requested documents should be denied because 1) there is no presumption of access to documents that were produced during discovery but were never presented to or considered by the court in resolving a motion; 2) defendants would be unfairly prejudiced by the public dissemination of the disputed documents outside of the adversarial process; and 3) the privacy interests of the defendant officers outweigh the public's purported right to or interest in access to the documents.

To begin, it is important to recognize that Kalven has not claimed a common law or first amendment right of access to the disputed documents but instead bases his claim on Rule 26(c)

---

[3]Specifically, Kalven seeks access to the following documents:

1) The list of all Chicago police officers who had more than ten official complaints lodged against them from 2001 to 2006; 2) The list of officers who had more than ten official complaints lodged against them from 2001 to 2006 and who were referred to one of Chicago's "early warning" programs; 3) The list of officers who had more than ten official complaints lodged against them from 2001 to 2006 and who worked in the Public Housing South Unit; 4) The defendant officers' Employee Complaint Histories; 5) The CR files opened against the individual defendant officers; and 6) The CR files directly related to plaintiff Diane Bond's complaints.

Petition to Intervene and Motion to Unseal Public Documents Relating to Allegations of Police Misconduct ("Motion to Unseal") at 15-16.

[4]Because the court finds below that the protective order previously entered in this case should be lifted, there is no reason to undertake a document-by-document review to assess Kalven's contention that the City improperly designated certain documents "confidential."

of the Federal Rules of Civil Procedure. Rule 26(c) permits a district court to issue protective orders covering discovery materials upon a showing of good cause:

> Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ....

Fed. R. Civ. P. 26(c). While defendants acknowledge the "good cause" standard for protective orders under the federal rules, defendants attempt to avoid its application by asserting common law and constitutional arguments regarding whether the public has a presumptive right of access to pretrial discovery materials that were not presented to the court and made part of the judicial decision-making process. These arguments are unavailing, however, because of the applicability of Rule 26(c), which provides an independent basis to inspect discovery materials.

Rule 26(c), unlike the common law and first amendment, *see Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984), embodies a presumption of public access to pretrial discovery materials, including those that are not part of the judicial record. "It is implicit in Rule 26(c)'s 'good cause' requirement that ordinarily (in the absence of good cause) a party receiving discovery materials might make them public." *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775 (1st Cir. 1988). Indeed, "[u]nless the public has a presumptive right of access to discovery materials, the party seeking to protect the materials would have no need for a judicial order since the public would not be allowed to examine the materials in any event." *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 145-46 (2nd Cir. 1987). Following the reasoning of the First and Second Circuits, the Seventh Circuit has concluded that while "pretrial discovery, unlike the trial itself, is usually conducted in private" "the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding."

4

*See Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945-46 (7th Cir. 1999). As a consequence, "[a]s a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings.⁵ *Am. Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1979).

In deciding whether good cause exists, the district court must balance the interests of the parties, taking into account the harm to the party seeking the protective order and the importance of the disclosure to the nonmoving party. *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997). When making a good cause determination, a district court may consider "privacy interests, whether the information is important to public health and safety and whether the party benefitting from the confidentiality of the protective order is a public official." *Citizens First Nat'l Bank of Princeton*, 178 F.3d at 944-45.

Defendants contend that "granting Kalven access to the protected documents he seeks to obtain is prejudicial to defendants because it would make public documents that cast defendants in an unfavorable light while depriving them of the ability and opportunity to effectively to respond to them." The fact that the allegations of police misconduct contained in the requested materials would bring unwanted, negative attention on defendants is not a basis for shielding the materials from public disclosure. The public has a significant interest in monitoring the conduct of its police officers and a right to know how allegations of misconduct are being investigated and handled. *See Doe v. Marsalis*, 202 F.R.D. 233, 238 (N.D. Ill. 2001). The court

---

⁵Defendants also assert that the public's interest in access to materials that form the basis of a judicial decision is greater than in other materials generated in the discovery process. There is certainly support for that proposition, *see Hobley v. Burge*, 225 F.R.D. 221, 224 (N.D. Ill. 2004), but it does not, as defendants suggest, defeat the presumption of public access to pretrial discovery materials.

acknowledges that some and perhaps even all of the allegations contained in the disputed documents may not be true, but it trusts that "[t]he general public is sophisticated enough to understand that a mere allegation of police [abuse], just like a lawsuit, does not constitute actual proof of misconduct." *Wiggins*, 173 F.R.D. at 230. Moreover, to the extent that the allegations are indeed unfounded, the court is unpersuaded by defendants' bare assertion that they will be unable to demonstrate that to the public. The City has its own public relations department and there are no doubt countless media outlets that would invite City officials to participate in an open and frank discussion regarding these and other allegations of police misconduct.

Defendants' contention that the police officers' privacy interest outweighs the public's interest in the disclosure of the disputed documents is similarly unpersuasive. While the defendant officers have a valid privacy interest in the protection of private and sensitive information such as their social security numbers, home addresses and telephone numbers, the protective order already provides for and Kalven consents to the redaction of such information. Defendants contend that the defendant officers' complaint and disciplinary histories, whether summarized in list form or employee complaint histories, or in the investigative files in which the officer is accused of misconduct, are also part of their employee personnel file and thus protected from disclosure. That information, though personal, has a distinct public character, as it relates to the defendant officers' performance of their official duties. Without such information, the public would be unable to supervise the individuals and institutions it has entrusted with the extraordinary authority to arrest and detain persons against their will. With so much at stake, defendants simply cannot be permitted to operate in secrecy.

Finally, defendants contend that the Illinois Freedom of Information Act, 5 Ill. Comp. Stat. 140/1 *et seq.*, and the Illinois Personnel Records Review Act, 820 Ill. Comp. Stat. 40/0.01, both prohibit the disclosure of the disputed documents. In another case, this court already rejected defendants' attempt to use the Illinois FOIA to justify the confidentiality of the type of documents at issue in this case:

> Not only have defendants not convinced the court that the CR files or matters of police discipline are covered by the provisions they cite, but, to the contrary, [the Illinois FOIA] specifically states "disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy." See 5 ILCS 140/7(1)(b). This sentiment is in line with the policy favoring the public's right to be informed of the conduct of public servants.

*Doe* v. *White*, 2001 WL 649536, at * 1 (N.D. Ill. June 8, 2001). Defendants' reliance on the Illinois Personnel Records Review Act is also unavailing. Section 7 of that statute, the only section that has any conceivable connection to the issue before the court,[6] merely provides that an employer must give an employee written notice before disclosing "a disciplinary report, letter of reprimand, or other disciplinary action to a third party." 820 Ill. Comp. Stat. 40/7(1). Thus, the Illinois Personnel Records Review Act does not prohibit the disclosure of the disputed documents; rather it merely prescribes the procedures the CPD, as the defendant officers' employer, must follow before disclosing them. Since those procedures are hardly onerous, the Illinois Personnel Records Review Act does not provide good cause for maintaining the protective order. Even if the procedures were overly burdensome, defendants concede that Kalven is likely to obtain the documents from Bond's counsel, and since they are not subject to

---

[6]Defendants do not cite a specific section of the statute nor explain how the statute prohibits disclosure of the disputed documents, so the court has reviewed the statute on its own in an effort to ascertain whether any basis exists for defendants' reliance on the statute.

7

the Illinois Personnel Records Review Act, defendants' reliance on that statute would remain unfruitful.

## CONCLUSION

Court related documents, even those not part of the judicial record, are presumed to be accessible to the public. The documents at issue in this case involve allegations of police misconduct, including the harassment and abuse of public housing residents, a particularly vulnerable group of citizens, and thus touch upon matters of grave public concern. The privacy interests of the defendant officers are diminished because of their status as public officials, and those interests that remain are served by the redaction of certain information from the requested documents. Balancing these interests, good cause no longer exists for shielding the requested materials from public inspection.[7] *See Marsalis*, 202 F.R.D. at 239 (authorizing the public disclosure of discovery documents produced by the City following its settlement of a civil rights lawsuit against its officers); *Wiggins*, 173 F.R.D. at 230 (same).

Accordingly, Kalven's motion to intervene and to unseal public documents relating to alleged police misconduct [#242] is granted. In their briefing on this motion, the parties did not distinguish between an order unsealing the record and an order ordering the disclosure of the disputed documents. To be clear, the court orders only that the protective order previously entered in this case be lifted to permit either party to disseminate the documents exchanged during the underlying litigation, as the court's authority to order dissemination of the documents

---

[7] Neither party discusses the potential impact of the public disclosure of these documents on unrelated third parties. Since, however, Kalven consents to the redaction of the names and contact information of any unrelated third party identified in the requested documents, the privacy interests of those individuals are not seriously implicated and thus do not provide good cause for continuing the protective order.

has not been shown. To the extent that either Bond or defendants agree to disclose the documents, any documents still bearing private and personal information regarding the defendant officers, including but not limited to, social security numbers, home addresses, telephone numbers, salaries, rates of pay, medical information and employee numbers, shall be redacted before being turned over to a third party. Additionally, consistent with Kalven's stipulation, the name and contact information of any unrelated third party shall also be redacted prior to disclosure.

Date: July 2, 2007                                Enter: _____

                                                  JOAN HUMPHREY LEFKOW
                                                  United States District Judge