UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| DIANE BOND, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | No. 04 C 2617 |
| v. | ) | |
| | ) | Judge Joan Humphrey Lefkow |
| CHICAGO POLICE OFFICERS EDWIN | ) | |
| UTRERAS (Star No. 19901), et al., | ) | Magistrate Judge Arlander Keys |
| | ) | |
| Defendants | ) | |

**Petition of 28 City of Chicago Aldermen for Leave to
Intervene and Motion to Obtain Access to Certain
Documents Regarding Oversight of the Chicago Police Department**

Petitioners, City of Chicago Aldermen Toni Preckwinkle, Manuel Flores, Robert

Fioretti, Pat Dowell, Leslie Hairston, Freddrenna Lyle, Sandi Jackson, Michelle Harris,

Anthony Beale, Toni Foulkes, Joann Thompson, Latasha Thomas, Lona Lane, Willie

Cochran, Howard Brookins Jr., Ricardo Munoz, Sharon Denise Dixon, Billy Ocasio,

Walter Burnett, Jr., Ed Smith, Scott Waguespack, Carrie Austin, Rey Colon, Emma

Mitts, Brendan Reilly, Thomas M. Tunney, Helen Shiller, Joseph A. Moore (hereafter

collectively referred to as "Petitioners" or "Aldermen"), by their counsel Matthew J.

Piers, Judson H. Miner and Clyde E. Murphy respectfully seek leave to intervene in this

matter in order to obtain access to certain Chicago Police Department documents which

have been produced to plaintiff in discovery in this case and wrongfully withheld from

them by the City of Chicago's Corporation Counsel. In support of their petition, the

Aldermen state as follows:

## I. INTRODUCTION

The Aldermen come before this Court under extraordinary circumstances. The Aldermen are the elected officials of the City of Chicago charged with overseeing its various governmental agencies, including its police department. The corporate authority of the City of Chicago (an Illinois municipal corporation) is the City Council. The 28 Petitioners are a majority of that 50 member body. The Aldermen petition the Court because City of Chicago documents containing critical information related to their supervision and oversight of the Chicago Police Department have been produced in discovery in this case, but are being improperly withheld from them by Corporation Counsel of the City of Chicago, in direct conflict with Corporation Counsel's express judicial representations that the documents would be made available to any alderman upon request.

During the underlying litigation of this case, certain Chicago Police Department documents were compiled and produced in discovery. Those documents include documents pertaining to police officers who have been the subject of more than ten civilian complaints in a five year period as well as police misconduct investigative files regarding a group of officers who were charged with having engaged in a pattern of abuse against racial minorities on Chicago's South Side. In a written opinion issued July 2, 2007 (copy attached as Exhibit A), this Court ordered that these documents should be made available to the public. Subsequently, the Corporation Counsel sought to stay that Order. During proceedings regarding the requested stay of the July 2, 2007 Order, it was correctly represented to the Court that certain Chicago aldermen were also seeking the documents. In response, the Corporation Counsel represented that any harm from a stay

2

would be mitigated because the Corporation Counsel would provide the documents to "any City Council member who requests them."  Exhibit B, Emergency Motion for Stay Pending Appeal, at 19.[1]  On July 9, when this Court temporarily stayed its July 2 Order, it specifically directed that "if these alderman ask you for the information [the documents], ... you should give it to them."  Exhibit C, at 9.

Thereafter, Petitioner Alderman Preckwinkle requested these documents from Corporation Counsel Mara Georges.  Exhibit E, August 23, 2007 letter from Preckwinkle to Georges.  Despite this Court's direction to the Corporation Counsel to provide the documents to the Aldermen, and despite Corporation Counsel's repeated representations to this Court and to the Seventh Circuit that it would do exactly that, the Corporation Counsel has refused to provide the documents to Alderman Preckwinkle.  Exhibit F, September 11, 2007 letter from Georges to Preckwinkle.

This Court has already recognized the importance of the documents to the public: "Without such information, the public would be unable to supervise the individuals and institutions it has entrusted the extraordinary authority to arrest and detain persons against their will.  With so much at stake, defendants simply cannot be permitted to operate in secrecy."  Exhibit A, at 6.

The Aldermen have an even more pressing need for this information than the

---

[1]    That motion to the Seventh Circuit references as support for this point the Corporation Counsel's representations to this Court on July 9, 2007. Exhibit C, Transcript of Proceedings of July 9, 2007, at 7-9. In addition, in seeking unsuccessfully on July 16, 2007 to get Judge Pallmeyer to extend this Court's temporary stay, the Corporation Counsel again represented that "if there's any public official who has an interest in the documents that are in question, any Alderman … they can contact the City, the City attorneys, and the city attorneys can provide them with that information." Transcript of Proceedings of July 16, 2007, copy attached as Exhibit D, at 18.

general public. The Aldermen are actively engaged in ongoing efforts to improve police oversight in Chicago in furtherance of their duty as elected officials and public trustees. In the context of the recent rash of allegations of serious misconduct within the City's Police Department, the importance of these documents to City Council cannot be overstated. Amid reports that rogue officers with a history of multiple abuse complaints are using their position for criminal purposes (*see, e.g.*, Exhibits G and H), it is imperative that the City Council have access to documents that may disclose patterns of illegal activity within the Police Department so that it can investigate and properly discharge its oversight responsibilities.

## II. BACKGROUND

The Court is familiar with the procedural history that forms the basis for Petitioners' Motion. During the course of litigation in this case, the City of Chicago produced to Plaintiff Diane Bond certain Chicago Police Department documents, including lists of Chicago police officers who were repeatedly charged with official misconduct and documents detailing the Chicago Police Department's investigations of civilian complaints against the defendant officers. These documents were covered by a protective order entered by this Court and, consequently, no one outside the litigation has been able to view them.

A journalist, Jamie Kalven, petitioned this Court to intervene and for a ruling that the documents at issue are not confidential and should be released. On July 2, 2007, this Court found that the documents had "a distinct public character" and ordered that the protective order be lifted, and the documents be released to the public. Exhibit A, at 6.

In the face of this Court's July 2 Order, the Corporation Counsel moved for an

4

emergency stay.  At the hearing on the motion to stay, counsel for Plaintiff Bond, Craig

Futterman, brought to the Court's attention the fact that Aldermen had been seeking

access to the disputed files.  Exhibit C, at 6-7.  The Court directly asked the City to

address the Aldermen's requests for this information:

> THE COURT: I do find it persuasive ... that aldermen of the city are interested in this information because it seems to me as our elected representatives they, [if] anyone, have an interest in this, a very legitimate interest.
> So what's your response to that?
>
> CITY COUNSEL: I don't doubt that there is an interest generally in these concerns ...

*Id.* at 8-9.

      The Assistant Corporation Counsel's comments were an understatement.  At the

time, the City Council had scheduled a hearing on a legislative proposal to reform

Chicago's Office of Professional Standards ("OPS"), the office charged with

investigating allegations of excessive force made against Chicago police officers.

Legislative consideration regarding reforms to improve police oversight is ongoing.  The

documents at issue contain vital information about the effectiveness of OPS, and have

direct bearing on the City Council's deliberations over possible reforms.  To ensure that

the Aldermen would have access to the information, the Court directed the Corporation

Counsel to provide the documents to any Alderman who requested them:

> THE COURT: Well, let me try to be clear here.  What I am hearing ... is that some aldermen have approached them about getting this information ... and the aldermen will say, well, what do you have?  **And if these alderman ask you for the information, you have it, you should give it to them.**

*Id.* at 9-10 (emphasis added).  Accordingly, the Corporation Counsel represented to this

Court, and thereafter to the Seventh Circuit that it would "make the confidential documents available to any City Council member who requests them."  Exhibit B, at 19.

### III.  THE ALDERMEN HAVE STANDING TO INTERVENE IN ORDER TO CHALLENGE THE PROTECTIVE ORDER

Just as the press has a legitimate interest in intervening in a lawsuit to obtain access to documents withheld under a protective order, the Aldermen have standing to intervene pursuant to Federal Rule of Civil Procedure 24 in order to "challenge a protective order for abuse or impropriety." *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 898 (7th Cir. 1994), *citing In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302 (7th Cir. 1984); *see also In re Associated Press v. Ladd*, 162 F.3d 503, 507 (7th Cir. 1998); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783 (1st Cir. 1988); and *Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000).

### IV.  THE CORPORATION COUNSEL SHOULD BE BOUND BY THE REPRESENTATIONS MADE TO THIS COURT AND THE SEVENTH CIRCUIT THAT IT WILL SHARE THE DOCUMENTS WITH "ANY CITY COUNCIL MEMBER WHO REQUESTS THEM"

On July 13, Corporation Counsel filed an emergency motion to stay the July 2 Order, this time with the Seventh Circuit.  In that motion, Corporation Counsel adopted and reaffirmed its prior agreement to provide City Council members with the documents:

> We are aware that one reason Bond wants to be freed from the commitment she and her counsel undertook in agreeing to the protective order is to provide the material to members of the Chicago City Council before a vote on Wednesday, July 18, 2007, on an ordinance to overhaul CPD's Office of Professional Standards, which investigates allegations of police misconduct.  That motivation should not bear on deciding this motion. **The Aldermen do not need to sue CPD or the Law Department to obtain this information, nor do they have to obtain access to the materials from Futterman or Kalven.  We have agreed to make the confidential documents available to any City Council member who requests them.**

Exhibit B at 19 (emphasis added). [2]

On that same day, Corporation Counsel filed a third emergency motion, this time to extend the stay granted by this Court. Before Judge Pallmeyer, who served as the emergency judge, the Corporation Counsel again reaffirmed that the documents would be provided to the Aldermen. The Corporation Counsel argued that there was no "time urgency" because "if there's any public official who has an interest in the documents that are in question, **any alderman ... can contact the city, the city attorneys, and the city attorneys can provide them with that information**." Exhibit F, at 18 (emphasis added).

Both this Court and the Seventh Circuit entered stay orders based in part upon the Corporation Counsel's representations that it would provide the documents to any Alderman who asked. Thereafter, contrary to the Corporation Counsel's representations to this Court and the Seventh Circuit, and in defiance of this Court's directions, the Corporation Counsel refused to provide Alderman Preckwinkle or any other City Council member with these critical documents. Exhibit F.

The Corporation Counsel should not be allowed to make representations to three courts, obtain relief based on those representations, and then fail to act in accordance with the representations. If the Corporation Counsel's contradictory positions had occurred in the context of separate litigation, it would be grounds for judicial estoppel. *See Moriarty v. Svec*, 233 F. 3d 955, 962 (7th Cir. 2000) ("The doctrine of judicial

---

[2]     As noted above, the Corporation Counsel cited pages 7-9 of the July 9 transcript before this Court as record support for its position that Corporation Counsel had affirmatively agreed to provide the OPS files to any Alderman who asked. See Exhibit B, at 19.

estoppel provides that when a party prevails on one legal or factual ground in a lawsuit, that party cannot later repudiate that ground in further litigation based on the same underlying facts"); *Johnson v. Exxon Mobil Corp.*, 2004 WL 419897, at *4 (N.D. Ill. Feb. 2, 2004) ("The doctrine of judicial estoppel is intended to protect the integrity of the judicial process by preventing a party who prevails on one ground in one judicial proceeding from repudiating that ground in a subsequent judicial proceeding"), citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). *Campbell v. Clarke*, 481 F.3d 967, 969 (7th Cir. 2007) (litigants "who attempt to deceive federal judges … cannot expect favorable treatment on matter of discretion"). Here, the Corporation Counsel has obtained a stay based, based in part on a representation that the Aldermen would have access to the documents, and then refused to act in accordance with the representations made to the court. The distinction should make no difference, for the policy underlying judicial estoppel is equally applicable here. The Corporation should not be allowed to make representations to three courts in the same litigation, prevail by obtaining a stay on the basis of those representations, and then repudiate the grounds upon which the stay was granted.

### V. THE ALDERMEN HAVE A COMPELLING NEED FOR THE DOCUMENTS

Petitioners simply seek an order permitting the Aldermen, the members of the corporate authority of the City, to have access to the documents of their own Police Department, documents which the Corporation Counsel has admitted they should be able to review. Although this Court's July 2, 2007 Order lifting the protective order has been appealed to the Seventh Circuit, the protective order itself was not appealed, and this

8

Court still retains jurisdiction to enforce it, or, in its discretion, modify its terms, either by directing the Corporation Counsel to fulfill its commitment to provide the documents to requesting Aldermen, or, in the alternative, by permitting plaintiff to share the documents with the Aldermen.

The citizens of Chicago have charged their Aldermen with the responsibility of running the City government, including overseeing the Police Department. The documents at issue here are important to the City Council's supervision of the Chicago Police Department. As this Court has already found, "as our elected representatives they, of anyone, have an interest in this, a very legitimate interest." Exhibit C, at 8.

As noted above, in recent months, the City Council has held ongoing sessions regarding oversight and reform of the Chicago Police Department and OPS. Their general concerns in this regard have been heightened by recent, very troubling revelations. For example, a Chicago police officer, Jerome Finnigan, has recently been charged by the United States Attorney's Office with a series of highly serious, illegal activities, including robbery, official misconduct, and attempted murder. *See* Exhibit G. It has been publically reported that he was #3 on the list of officers with repeated official misconduct complaints. *See* Exhibit H. The two officers who headed the list above Finnigan were reportedly fellow members of the Special Operations Section of the Chicago Police Department, which was recently disbanded by the Superintendent of police in response to numerous charges of official misconduct. *Id.*

In addition to their concerns that the Police Department, the largest and one of the most important City departments, should effectively manage its personnel, the Aldermen are also acutely concerned that other as-yet unidentified officers on this list may be

9

involved in patterns of abuse perpetrated upon the citizens of Chicago, the very people the Aldermen and the police are responsible for protecting. The Aldermen have a legitimate and pressing need to see the documents in order to carry out their duties of overseeing the Police Department.

Further, Chicago City Council members are charged with approving the collective bargaining agreements between the Chicago Police officers' bargaining representative, the Fraternal Order of Police ("FOP") and the City. The present agreement expires this year and a new one is currently being negotiated by the Corporation Counsel and the FOP. The collective bargaining agreements with the FOP contain negotiated provisions which implicate police supervision, discipline, monitoring, and control - including the use (or non-use) of prior OPS complaints in OPS disciplinary proceedings to show such matters as motive and the lack of mistake. In addition, the collective bargaining agreements address the timing of the destruction of OPS files and limitations on the use of information about the number of complaints against officers in police behavioral monitoring and control systems.

The documents sought by the Aldermen facilitate their ability to exercise their legislative duty to carefully scrutinize the contract on behalf of the public so that the contract does not insulate officers potentially engaged in illegal or improper activities from meaningful discipline, monitoring and control.

For the foregoing reasons, good cause exists to modify the protective order to permit the Aldermen to access the documents, either from plaintiff Bond or the Corporation Counsel.

10

## VI. CONCLUSION

The petitioning Aldermen seek the opportunity to review the Chicago Police Department documents which have already been provided to a party who sued the City. They seek to do so as part of their duties as public stewards and members of the corporate authority. The Aldermen have demonstrated substantially more than good cause to obtain access to these documents and ask the Court only to order what it has already determined they should receive, and what Corporation Counsel agreed they should be able to receive.

WHEREFORE**,** Petitioners, Aldermen Toni Preckwinkle, Manuel Flores, Robert Fioretti, Pat Dowell, Leslie Hairston, Freddrenna Lyle, Sandi Jackson, Michelle Harris, Anthony Beale, Toni Foulkes, Joann Thompson, Latasha Thomas, Lona Lane, Willie Cochran, Howard Brookins Jr., Ricard Munoz, Sharon Denise Dixon, Billy Ocasio, Walter Burnett, Jr., Ed Smith, Scott Waguespack, Carrie Austin, Rey Colon, Emma Mitts, Brendan Reilly, Thomas M. Tunney, Helen Shiller, and Joseph A. Moore, respectfully request that this Court enter an Order:

1.      Granting them leave to intervene in this matter pursuant to Federal Rule of Civil Procedures 24; and

2.      Modifying the Protective Order of February 2, 2005, to allow plaintiff to provide them with complete copies of the following documents, unredacted except as to private and personal information[3]:

---

[3]      As indicated in the Court's Order of July 2, 2007, such information would not include social security numbers, home addresses, telephone numbers, salaries, rates of pay, medical information and employee numbers, which the Aldermen have no need for in their review and consideration of these documents.

(a)    The list of all Chicago police officers who had more than ten official complaints lodged against them from 2001 to 2006;

(b)    The list of officers who had more than ten official complaints lodged against them from 2001 to 2006 and who were referred to one of Chicago's "early warning" programs;

(c)    The list of officers who had more than ten official complaints lodged against them from 2001 to 2006 and who worked in the Public Housing South Unit;

(d)    The defendant officers' Employee Complaint Histories;

(e)    The CR files opened against the individual defendant officers; and

(f)    The CR files directly related to plaintiff Diane Bond's complaints; or, in the alternative

3.    Directing the Corporation Counsel to provide them with complete copies of the documents listed above, unredacted except as to personal and private information.

RESPECTFULLY SUBMITTED,

/s/ Matthew J. Piers
One of the Attorneys for Petitioners

Dated: October 22, 2007

Matthew J. Piers
**Hughes Socol Piers Resnick & Dym, Ltd.**
Three First National Plaza
70 West Madison Street, Suite 4000
Chicago, Illinois 60602
(312)580-0100

Judson H. Miner
**Miner Barnhill & Galland, P.C.**
14 West Erie Street
Chicago, Illinois 60610
(312) 751-1170

12

Clyde Murphy
**Chicago Lawyers Committee for Civil
  Rights Under Law, Inc.**
100 N. LaSalle Street, Suite 600
Chicago, IL  60602
(312) 630-9744

**<u>ATTORNEYS FOR ALDERMEN:</u>**
Toni Preckwinkle
Manuel Flores
Robert Fioretti
Pat Dowell
Leslie Hairston
Freddrenna Lyle
Sandi Jackson
Michelle Harris
Anthony Beale
Toni Foulkes
Joann Thompson
Latasha Thomas
Lona Lane
Willie Cochran
Howard Brookins Jr.
Ricardo Munoz
Sharon Denise Dixon
Billy Ocasio
Walter Burnett, Jr.
Ed Smith
Scott Waguespack
Carrie Austin
Rey Colon
Emma Mitts
Brendan Reilly
Thomas M. Tunney
Helen Shiller
Joseph A. Moore